PHELPS DODGE COPPER PRODUCTS COMPANY *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES (13007)

PETERS, C. J., HEALEY, SANTANIELLO, CALLAHAN and HULL, Js.

Argued March 3—decision released June 16, 1987

*Peter H. Gruen,* with whom was *Gary L. McGuirk,* for the appellant (plaintiff).

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

ARTHUR H. HEALEY, J. This matter, which comes to us by way of reservation from the Superior Court, seeks advice on the following question: "Whether a component part of a machine must constitute a machine in and of itself or be purchased in conjunction with a machine in order to be exempt from the Connecticut sales and use tax pursuant to Section 12-412 (34)[1] of the Connecticut General Statutes."

---

[1] General Statutes § 12-412 (34) provides: "Machinery used in manufacturing or agricultural production. Sales of and the storage, use or other consumption of machinery used directly in a manufacturing or agricultural production process. The word 'machinery' as used in this subsection means the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery, but excluding office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."

On March 12, 1985, the plaintiff, Phelps Dodge Copper Products Company, received a "Statement of Amount Due, Sales and Use Tax" which imposed a sales and/or use tax in the amount of $119,695.58, plus interest and penalty. The plaintiff protested the amount of the tax on the basis that its purchase of certain machinery and devices was not taxable by virtue of the exemption from tax on the sale and use of machinery used directly in a manufacturing process provided for in General Statutes § 12-412 (34). As a result of the protest, the defendant commissioner of revenue services (commissioner) reduced the assessment and issued a "Revised Statement of Tax" in the amount of $60,329.83 plus interest of $36,529.30. On September 9, 1985, the plaintiff, under protest, paid the total amount due pursuant to the "Revised Statement of Tax."

On September 11, 1985, the plaintiff instituted an action in the Superior Court against the commissioner requesting that the assessment be reduced to zero and that the plaintiff be reimbursed for any tax and interest paid as a result of the assessment. The plaintiff and the commissioner filed a joint request to reserve the matter for consideration by the Appellate Court. On June 5, 1986, the trial court, A. Aronson, J., granted that request. On August 4, 1986, the parties filed a joint motion to transfer the case to the Supreme Court. On August 12, 1986, the case was transferred to this court.

The parties have stipulated to the following background facts: The plaintiff is a division of Phelps Dodge Industries, Inc., a Delaware corporation authorized to do business in Connecticut. The plaintiff is engaged in the business of manufacturing continuous cast copper rod and related products at its production facility in Norwich.

Between December, 1980, and July, 1983, the plaintiff installed a new production line at its Norwich cop-

per plant for the production of cast copper rod. In connection with the installation of the new production line, the plaintiff "purchased machines, equipment, devices, components, belts, pulleys, ducts, shafts, valves, tubing, coils, retainers, and other related devices ('The Installed Devices') from various sources" and incorporated the installed devices into the new production line at the Norwich plant.

After the plaintiff had installed the new production line, the commissioner audited the plaintiff's records for the period December 1, 1980, through November 3, 1983. As a result of the audit, the commissioner issued a deficiency assessment plus interest and penalty thereon. In assessing the amount of tax due, the commissioner determined that *some* of the installed devices, the "disputed devices," were not entitled to the exemption provided in § 12-412 (34). As stipulated by the parties, the commissioner made this determination because by regulation he has interpreted this exemption as applying "(i) to an item or device which, when purchased, is a 'basic machine itself' within the meaning of § 12-412 [34], or (ii) to 'component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery' . . . only when purchased in conjunction with a 'basic machine itself.' . . . [U]nder [the commissioner's] interpretation [of § 12-412 (34)], such component parts [and] contrivances . . . qualify for the exemption only if purchased from the same vendor of the 'basic machine itself' and at the same time as the 'basic machine itself.' " The assessment was therefore based on the finding of the commissioner that the disputed devices did not constitute a "basic machine" or were not purchased from the same vendor of the "basic machine" and at the same time as the purchase of the "basic machine."

The parties have also expressly stipulated that all the disputed devices will be used in a "manufacturing and production process" as required by § 12-412 (34) and that the disputed devices, by themselves, do not either singly or jointly constitute a "basic machine" as that term is used in § 12-412 (34). Additionally, the parties have stipulated that all of the disputed devices were purchased at the same time and all were necessary for the initial operation of the new production line.[2] The plaintiff concedes that but for the exemption provided in § 12-412 (34), the disputed devices would be subject to tax.

I

General Statutes § 12-412 (34) exempts from the sales and use tax the sale and use of "machinery used directly in a manufacturing . . . production process." The statute defines "machinery" as "the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery . . . ." Section 12-426-11b (c) (1) of the regulations of Connecticut state agencies provides: "The [sales and use] tax *shall* apply to sales of and the storage, use or other consumption of contrivances, such as belts, pulleys, shafts and operating structures accessory to machinery, spare parts for the repair of machinery, and component parts, *when purchased separately."* (Emphasis added.)

The commissioner argues that his regulatory interpretation of § 12-412 (34) is consistent with that statute and, therefore, "a component part of a machine must constitute a machine in and of itself or be purchased in conjunction with a machine in order to be

---

[2] The parties have stipulated that none of the disputed devices constitutes repair or replacement parts.

exempt from the Connecticut Sales and Use Tax . . . . '' The plaintiff argues that the commissioner's regulatory interpretation of § 12-412 (34) is "invalid, unreasonable, arbitrary, contrary to law and an unconstitutional exercise of administrative powers"[3] and that, under the statute, component parts of a machine are exempt from the Connecticut sales and use tax whether they constitute a basic machine in and of themselves or are purchased in conjunction with a basic machine. The issue before this court, therefore, is essentially the proper interpretation and application of the language of § 12-412 (34).

The plaintiff claims that items such as the disputed devices fall within the clear meaning of the term "machinery" as it is used in the exemption statute. It argues that in enacting § 12-426-11b (c) (1) of the regulations, the commissioner was not attempting to interpret § 12-412 (34) but was instead enacting new legislation. The plaintiff contends that the commissioner's regulation is invalid and, therefore, "should not be applicable in determining the tax exempt status of the Disputed Devices since [the regulation] establishes an artificial distinction between component parts purchased from a separate vendor and component parts purchased from the same vendor on the same invoice as the basic machine." The plaintiff argues that the distinction created by the regulation frustrates the legislative purpose of § 12-412 (34).[4]

---

[3] At oral argument, the plaintiff withdrew its claim that the commissioner's interpretation amounted to an *unconstitutional* exercise of administrative power.

[4] In support of this position, the plaintiff argues that the definition of "machinery" was not intended to be viewed so narrowly as to include only the basic machine itself. It claims that the statute nowhere requires that component parts be purchased at the same time from the same vendor. Rather, the term "machinery" was intended to be used in a broad sense, i.e., "to include the entire machine with its necessary component parts at the point when it is ready for operation."

The commissioner in his brief sets forth three arguments which, when considered together, support his regulatory interpretation of General Statutes § 12-412 (34). First, the commissioner points out that § 12-412 (34) is an exemption from tax and as such must be strictly construed against the party claiming the exemption. Second, the regulation, which sets forth his interpretation of the statute, has received approval from the standing legislative regulation review committee and has been in effect for the past six years. Third, the commissioner's regulatory interpretation is "fully supported by the legislative history of and circumstances surrounding the enactment of § 12-412 (34)."

It is fundamental that " '[t]he power conferred [upon administrative agencies] to make regulations for carrying a statute into effect must be exercised within the powers delegated . . . and it cannot be extended to amending or adding to the requirements of the statute itself.' " *Loglisci* v. *Liquor Control Commission,* 123 Conn. 31, 37, 192 A. 260 (1937); *Page* v. *Welfare Commissioner,* 170 Conn. 258, 262, 365 A.2d 1118 (1976); *Ingham* v. *Brooks,* 95 Conn. 317, 329, 111 A. 209 (1920). In *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 604, 362 A.2d 847 (1975), we held that " '[n]o administrative or regulatory body can modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power.' *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5 [1964]." It is equally fundamental, however, that " '[s]tatutes are to be construed in light of their legislative history, their language, the purpose they are to serve, and the circumstances surrounding their enactment.' " *Kellems* v. *Brown,* 163 Conn. 478, 502–503, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). We also note that the commissioner's regulatory interpretation of

the statute, which he is charged with administering, is entitled to great deference and weight. *Board of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241, 460 A.2d 1255 (1983).

We agree with the commissioner that General Statutes § 12-412 (34) provides an exemption from taxation and that under our case law "[a] statutory provision granting an exemption from a tax is to be strictly construed against the party claiming the exemption. *Hartford Hospital* v. *Board of Tax Review,* 158 Conn. 138, 147, 256 A.2d 234 (1969)." *Oxford* v. *Beacon Falls,* 183 Conn. 345, 346, 439 A.2d 348 (1981); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 420, 521 A.2d 569 (1987). This canon of construction, however, is not itself dispositive of the issue before us because " 'such strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used.' *Jewett City Savings Bank* v. *Board of Equalization,* 116 Conn. 172, 185, 164 A. 643 [1933]." *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561 (1971). Keeping this consideration in mind, we must therefore assess the other arguments proffered by the commissioner.

The commissioner also points to the fact that the regulation has been approved by the legislative regulation review committee as required by General Statutes § 4-170. General Statutes § 4-170 provides in part that "[n]o adoption, amendment or repeal of any regulation . . . shall be effective until the original of the proposed regulation approved by the attorney general, as provided in section 4-169 . . . [has] been submitted to the standing legislative regulation review committee . . . . The committee . . . in its discretion, may . . . approve [or] disapprove . . . any such regulation." The fact that the commissioner's regulation has been approved by the standing legislative regulation

review committee, although not dispositive of the issue before us, is an *important consideration* in our determination of whether the commissioner's regulation comports with the legislative intent behind § 12-412 (34). *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599–600, 522 A.2d 771 (1987); *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 144, 509 A.2d 1050 (1986). The committee's "ratification" of the regulation shows support for the proposition that the commissioner's regulatory interpretation of the statute "is part of the general statutory scheme" that the legislature has provided for the imposition of the sales and use tax. See *Texaco Refining & Marketing Co.* v. *Commissioner,* supra; *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* supra.

The commissioner also points to the fact that his regulatory interpretation of § 12-412 (34) has existed since 1977 and that since that time, the legislature has twice amended the statute without changing the definition of "machinery." The fact that the regulation has been in existence for a substantial period of time, although not itself determinative, is persuasive as to its validity. *Sutton* v. *Lopes,* 201 Conn. 115, 120, 513 A.2d 139 (1986); *Oral Roberts University* v. *Oklahoma Tax Commissioner,* 714 P.2d 1013, 1015–16 (Okla. 1985); see *Cammarano* v. *United States,* 358 U.S. 498, 511, 79 S. Ct. 524, 3 L. Ed. 2d 462 (1959).

The most important of the commissioner's arguments is that his regulatory interpretation of the statute is "fully supported by the legislative history and circumstances surrounding the enactment of [§ 12-412 (34)]." Although the legislative history does not speak precisely to this point, we agree that it can be read to support the commissioner's interpretation of the statute. That fact, considered together with his other arguments, which we have already discussed, lead us to con-

clude that the commissioner's regulatory interpretation of the statute is consistent with the language of that statute and does not contravene the legislative intent behind it.

The definition of "machinery" which is under consideration in this case was first enacted in 1959. Public Acts 1959, No. 578, § 11. It was enacted as part of an amendment to the predecessor of General Statutes § 12-412 (18)[5] which provides a sales and use tax exemption for materials and tooling consumed in the manufacture of tangible personal property. The amendment provided an exception to this exemption and established that machinery, as defined, *is* subject to the sales and use tax. There is no discussion in the legislative history of No. 578, § 11, of the 1959 Public Acts as to the meaning of the term "machinery."

In 1976, the legislature partially reduced the rate of sales tax for machinery used in a manufacturing production process. In doing so, it incorporated the

---

[5] The predecessor of General Statutes § 12-412 (18), General Statutes (Rev. to 1977) § 12-412 (r), provided: "Production materials. Sales of and the storage or use of materials, rope, fishing nets, tools and fuel or any substitute therefor, but excluding machinery or replacement parts thereof used in production, which become an ingredient or component part of tangible personal property to be sold or which are used directly in agricultural production or in the fishing industry or in an industrial plant in the actual fabrication of the finished product to be sold. The word 'machinery' as used herein shall mean the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery. For the purpose of this subsection, the raising of poultry and livestock shall be construed to be included in the term 'agricultural production.' Sales of and the storage or use of materials, tools and fuel or any substitute therefor, but excluding machinery or replacement parts thereof, when such products are used directly in the furnishing of power to an industrial manufacturing plant or in the furnishing of gas, water, steam or electricity when delivered to consumers through mains, lines or pipes."

In 1978, the legislature deleted, inter alia, the sentence which referred to the definition of "machinery." Public Acts 1978, No. 78-71, § 3.

aforementioned definition of "machinery." Public Acts 1976, No. 76-114, § 1. The legislative history of No. 76-114, § 1, of the 1976 Public Acts reveals that the legislature intended the term "machinery" to include "machine parts." On the floor of the House, Representative James J. Clynes noted, inter alia, that "machinery is defined in Section 1 as 'machinery used in the production of manufacturing goods,' and this also includes machine parts." 19 H.R. Proc., Pt. 5, 1976 Sess., p. 1688. In response to this legislation, the commissioner, in 1977, promulgated § 12-426-11 (A) of the regulations of Connecticut state agencies, the predecessor of § 12-426-11b. This regulation, which is in substantial accord with § 12-426-11b,[6] provided: "Contrivances, such as belts, pulleys, shafts and operating structures accessory to such basic machine and equipment and devices used to control, regulate or operate it . . . will be subject to the 7% tax rate *when purchased separately*. The 2½%[7] tax rate is applicable *only* and *if* any of these accessory parts are *purchased as a package with the basic machine.*" (Emphasis added.)

In 1977, the legislature amended No. 76-114, § 1, of the 1976 Public Acts. Public Acts 1977, No. 77-370, § 1. This amendment further reduced the sales and use tax on the sale of machinery used in manufacturing or agricultural production and reenacted the definition of "machinery," specifically broadening the scope of that definition by including within it "numerically controlled machinery used directly in the manufacturing process." Public Acts 1977, No. 77-370, § 1. The legislative his-

---

[6] The stated purpose of § 12-426-11b of the regulations of Connecticut state agencies is: "To consolidate §§ 12-426-11 and 12-426-11 (A) to eliminate any contradictory language between the two and to have the new regulation conform with changes made by Public Act 78-71, which exempted the sale of machinery from the sales tax when used directly in a manufacturing or an agricultural production process."

[7] In 1978, the legislature reduced the tax on exempted machinery from 2.5 percent to zero. Public Acts 1978, No. 78-71.

tory of that act is clear that the legislature was put on notice of the commissioner's regulatory interpretation of the statute. The remarks of Senator Lawrence J. DeNardis demonstrate this legislative awareness: "What Senator [B. Patrick] Madden and other supporters of the amendment [to include repair and replacement parts within the definition of 'machinery'] want to do is to eliminate an inconsistency under the present law and statute . . . . Because when we lowered the sales tax on manufacturing production machinery from 7 to 3½%, the statute was silent with respect to repair and replacement parts, and subsequently the State Tax Department in regulation 11A said that repair and replacement parts were taxable at higher rates, *so we have an illogical situation whereby a manufacturer who desires to invest in a new machine buys his component parts separately and assembles the machine himself, but because of the Tax Department ruling that it is an administrative impossibility to distinguish between new components and repair parts, each part purchased by the manufacturer in this particular case, is taxable at 7%, so the new machine in effect, is effectively taxed at a pre-1976 rate, and so we are asking that in the interests of consistency and fairness and equity, that this amendment be adopted.*" (Emphasis added.) 20 S. Proc., Pt. 6, 1977 Sess., pp. 2244–45.[8]

The following year, the legislature eliminated the sales and use tax on machinery used in manufacturing and agricultural production. Public Acts 1978, No. 78-71, § 4. In doing so, it again reenacted the definition of "machinery" and rejected an amendment, similar to one proposed and rejected in 1977, which would

---

[8] We point out that the remarks of Senator Lawrence J. DeNardis were made in support of a legislative bill to include repair and replacement parts within the exemption. Although the disputed devices in this case are not repair or replacement parts, the comments of Senator DeNardis are relevant to the issue of legislative awareness of the commissioner's regulatory interpretation of General Statutes § 12-412 (34).

have included repair and replacement parts within the definition of "machinery" 21 S. Proc., Pt. 3, 1978 Sess., pp. 1184–86; 21 H.R. Proc., Pt. 5, 1978 Sess., p. 1962.

This court has recently made it clear that the legislature is presumed to be aware of the interpretation of a statute and "that its subsequent nonaction may be understood as a validation of that interpretation." *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987); *Shell Oil Co.* v. *Ricciuti,* 147 Conn. 277, 285, 160 A.2d 257 (1960). This presumption is strengthened in this case because the legislative history of the statute demonstrates that the legislature is in fact aware of the commissioner's regulation, but has taken no action to correct that interpretation. See 20 S. Proc., Pt. 6, 1977 Sess., pp. 2244–45, remarks of Senator Lawrence J. DeNardis. The legislature has not only taken *no* action, it has on two occasions affirmatively reenacted the definition of "machinery." "[D]eference is due an Agency's construction of a statute when [the legislature] becomes aware of and fails to correct such a construction." 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 49.05, p. 363, and cases cited therein. We also note that the "[i]nterpretations and application of regulations by . . . administrative agencies . . . charged with the duty of administering and enforcing a statute [although not binding,] have great weight in determining the operation of a statute." 2A J. Sutherland, supra, p. 362. Regulations promulgated by an agency having authority to do so are presumed valid. *DiFederico* v. *McNamara,* 181 Conn. 54, 56, 434 A.2d 320 (1980).

The plaintiff argues that the legislature did not intend the term "machinery" to be defined "so narrowly as to include only the basic machine itself" and maintains that the commissioner's regulation frustrates the legislative purpose of § 12-412 (34). We disagree.

Contrary to the plaintiff's assertion, the commissioner's regulation does not limit the definition of "machinery" "so narrowly as to include *only* the basic machine itself." (Emphasis added.) The regulation interprets the statutory definition of "machinery" conjunctively. Under the commissioner's regulation, the term "machinery," at a minimum, is the basic machine itself; at its maximum, however, the term "machinery" is the basic machine itself together with all its components, contrivances, and all its equipment when purchased in the same transaction. Thus, the commissioner's interpretation looks at the "transaction" in which the item is purchased. If in that "transaction" the taxpayer purchases a basic machine plus component parts, the machine and its component parts are exempt. If in the "transaction" only component parts are purchased, the exemption does not apply because there has not been a purchase of "machinery" in that transaction, i.e., not a purchase of a basic machine. The regulation, therefore, is not as narrow as the plaintiff argues.

We disagree with the plaintiff's argument that the regulation frustrates the policy behind § 12-412 (34). The legislative history of the statute makes it clear that one of the purposes behind the exemption is to stimulate manufacturing industries in Connecticut.[9] While,

[9] Senator Audrey P. Beck stated: "After meeting with a large number of sectors of the business community, we began this tax reduction and today will complete the elimination of the Sales Tax on machinery and equipment. . . .

"We do this for two reasons, Mr. President. The first is that in the judgment of the Committee, the sector of the business community having the greatest difficulties is the manufacturing sector and, therefore, by eliminating the Sales Tax on machinery and equipment, we feel that we will be stimulating the manufacturing sector to modernize, to improve, to remain efficient and competitive . . . .

"We will provide relief for the business sector by way of this complete elimination of the Sales Tax on machinery and equipment . . . . It is a great pleasure to be able to completely repeal a tax . . . ." 21 S. Proc., Pt. 3, 1978 Sess., pp. 1151–52; see also 21 S. Proc., Pt. 3, 1978 Sess., pp. 1149–60; 21 H.R. Proc., Pt. 5, 1978 Sess., pp. 1949–66.

arguably, the plaintiff's interpretation of the statute could further this goal, we do note that in 1977 and 1978, the legislature refused to expand the definition of "machinery" to include separately purchased parts, specifically, repair and replacement parts. In refusing to expand the definition, the legislature responsibly recognized the counterbalancing revenue considerations which are inherent in any exemption from tax. We, therefore, cannot accept the plaintiff's argument that a decision upholding the validity of the commissioner's regulation would necessarily frustrate the legislative purpose of § 12-412 (34).

Taken together, the foregoing considerations lead us to the conclusion that the commissioner's regulation is valid and not inconsistent with the statute. A component part of a machine must constitute a machine in and of itself or be purchased in conjunction with a machine in order to be exempt from the Connecticut sales and use tax pursuant to § 12-412 (34) of the General Statutes. The answer to the reserved question, therefore, is yes.[10]

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.

---

[10] At oral argument before this court, the plaintiff claimed that the commissioner's interpretation of his regulation is erroneous. We need not address this claim because it is not properly before us as it is not included in the reservation.