## LAWRENCE MARSHALL *v.* LAWRENCE F. DELPONTE, COMMISSIONER OF MOTOR VEHICLES

| SUPERIOR COURT | JUDICIAL DISTRICT OF NEW HAVEN | FILE No. 309587 |
| --- | --- | --- |

Memorandum filed May 14, 1991*

*Joseph Chiarelli,* for the plaintiff.

*P.J. Green,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the defendant.

CLARK, J. The plaintiff appeals pursuant to General Statutes § 4-183 and § 14-227b-22 of the Regulations of Connecticut State Agencies from the decision of the defendant acting on findings and conclusions by a hearing officer ordering that the plaintiff's motor vehicle operator's license be suspended for ninety days as required by General Statutes § 14-227b (h) for failure to pass a chemical test.

The record discloses the following. On December 22, 1990, a hearing was held before hearing officer Brian Carey, an adjudicator of the defendant, to determine whether the plaintiff's motor vehicle operator's license

---

* This decision was appealed to the Appellate Court, the decision of which can be found at 27 Conn. App. 346.

would be suspended. The authority for the hearing and the rules for conducting the hearing are detailed in General Statutes §§ 14-4a and 14-227b, and in §§ 14-132-36 through 14-137-39, and §§ 14-227b-1 through 14-227b-29 of the Regulations of Connecticut State Agencies.

At the hearing, the hearing officer entered into evidence state's exhibit A, which consisted of a department of motor vehicles form A-44, the officer's DWI arrest and alcohol test refusal or failure report and a photocopy of two intoximeter test records. Also found in the record but not listed as evidence were the case incident report and the West Haven police department warning form. All these reports, except the test results, were made under oath by Officer Kimberly Quesinberry of the West Haven police department.

On November 21, 1990, at 12:51 a.m., Quesinberry observed an automobile fail to stop for a red light at the intersection of Captain Thomas Boulevard and Savin Avenue in West Haven. Upon stopping the vehicle, the officer detected the odor of alcoholic beverages on the operator's breath. The plaintiff was the operator. The officer noted in his report that the plaintiff "had glassy eyes, slurred speech, [and] swayed while standing outside [the] vehicle."

The plaintiff was given two of the five performance tests listed in form A-44—walking and turning and standing on one leg. On the walk-turn test the officer checked two boxes on the form: "No heel to toe" and "incorrect number of steps." On the one leg stand test, two boxes were checked: "sways while balancing" and "puts foot down." The plaintiff was placed under arrest for operating under the influence in violation of General Statutes § 14-227a. He was taken to the police station, was warned of his right to remain silent and was requested to take an intoximeter test. He took two

intoximeter tests, the first at 1:27 a.m., which resulted in a reading of 0.178 and the second at 2:05 a.m., which resulted in a reading of 0.177. He was given these results a short time later. Further, prior to taking the tests, he was informed that his license would be suspended if he refused to submit to a test or if the results of that test indicated that at the time of the alleged offense the ratio of alcohol in his blood was ten one-hundredths of 1 percent or more by weight. At the same time, he was given the opportunity to telephone a lawyer.

At the hearing the plaintiff testified that he had not been under the influence and that just before leaving the Marriott Hotel in Trumbull to go home, he had consumed only two drinks. He was almost home when the officer stopped him. He stated that he had performed the sobriety tests as the officer had directed him to do. The plaintiff testified that he was directed to exhale into the intoximeter machine three times. The plaintiff testified that after the second time, the operator of the machine said, "This isn't right," and the operator put a baseboard heater on and after five minutes had the plaintiff blow into the machine again. Only two test results were introduced at the hearing.

The record of the hearing officer consisted of circling one of the four findings of fact and conclusions of law numbered as follows: "1-Probable cause; 2-Arrested; 4-Failed test; 5-Operation." There is no number three on the form. In addition, under the heading: "Subordinate findings of fact" the hearing officer wrote: "Probable cause consists of the improper operation, glassy eyes, slurred speech, odor of liquor and swaying while standing." That is the totality of the hearing officer's decision.

Subsequently, on December 20, 1990, the defendant sent to the plaintiff a decision consisting of the following:

"Findings of Fact and Conclusions of law:

"1. The police officer had probable cause to arrest the above-named operator for a violation specified in Section 1 of Public Act 89-314. (now Sec. 14-227a).

"2. The operator was placed under arrest.

"3. The operator submitted to the test or analysis and the results indicated at the time of the offense a [blood alcohol content] of .10 or more.

"4. Said person was operating the motor vehicle."

Immediately following on the form was an entry entitled "Subordinate Findings, if any" and a space. This space was left blank.

The plaintiff's driver's license was suspended for ninety days. This appeal followed.

On review of an agency's action the court is bound by the requirements of General Statutes § 4-183 (i), (j) and (k) which provide: "(i) The appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the agency are not shown in the record or if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment.

"(k) If a particular agency action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the agency decision, orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action."

In order for the plaintiff to be properly before this court he must be an aggrieved person within the meaning of General Statutes § 4-183 (a) in that a specific, personal and legal interest of his has been adversely affected by the defendant's decision. The suspension of his motor vehicle operator's license is aggrievement under the statute. *Tarescio* v. *Muzio,* 40 Conn. Sup. 505, 507–508, 515 A.2d 1082 (1986).

Under § 14-227b (f), the statute in question here, the General Assembly has prescribed the issues to be decided in the administrative hearing: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test

or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . ."

In addition, the Supreme Court has held: "The hearing is expressly limited to the four issues enumerated above." *Buckley* v. *Muzio,* 200 Conn. 1, 7, 509 A.2d 489 (1986). At the time of *Buckley,* the 1983 revision of the statute applied only to a person who refused to submit to a test or analysis. Public Acts 1989, No. 89-314, made the section applicable to anyone who submitted to a test or analysis the results of which indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of 1 percent or more of alcohol, by weight. "Thus, the limited issue before the trial court was whether the adjudicator properly applied the statute *as written* to the facts of the case." (Emphasis in original.) *Buckley* v. *Muzio,* supra, 7; see *Volck* v. *Muzio,* 204 Conn. 507, 512, 529 A.2d 177 (1987).

The parties agree that two of the four issues to be determined at the hearing have been met. The plaintiff had been placed under arrest and he had been operating a motor vehicle. Left for the commissioner's decision were (1) whether he had been under the influence of intoxicating liquor and (2) whether the results of the intoxication tests indicated that at the time of the alleged offense the ratio of alcohol in the blood of the plaintiff was ten-hundredths of 1 percent or more of alcohol by weight.

On the notice of hearing sent by the defendant to the plaintiff dated December 10, 1990, it was noted that the hearing would be limited to the four statutory issues. The next paragraph of that letter stated: "At

the hearing the report submitted by the arresting officer FORM A-44 shall be offered as evidence by the Commissioner."

The transcript of the hearing shows that at the start of the hearing, the hearing officer identified himself and stated the purpose of the hearing. Counsel for the plaintiff then identified himself.

The hearing continued: "Mr. Carey [Hearing Officer]: I know counsel has had an opportunity to view the file.

"Mr. Chiarelli [Plaintiff's Counsel]: May I make an offer as far as the police report?

"Mr. Carey: Go ahead.

"Mr. Chiarelli: We object to the admission of the report as completely hearsay. Are you going to overrule my objection?

"Mr. Carey: Yes.

"Mr. Chiarelli: Exception.

"Mr. Carey: Exception is noted and it will be marked State's Exhibit A. This is the extent of the evidence that the state will be offering."

The record shows that form A-44 (the officer's DWI arrest and alcohol test refusal or failure report), submitted and sworn to by the arresting officer with the two intoximeter test results attached as called for on the form, was admitted as state's exhibit A. Also found in the record is a department of police services south central regional case/incident report concerning the plaintiff's arrest signed and sworn to by the arresting officer together with a copy of the *Miranda* warning given by the officer to the plaintiff. There are no exhibit numbers on the latter two documents. Clearly the hearing officer should not have read the case incident report and the *Miranda* warning. They should not have been

admitted as part of the record of the administrator's hearing. The information found in the case incident report and on the *Miranda* card, however, duplicates that which is found in state's exhibit A. Any error committed by including these non-exhibits in the record is harmless, as the erroneous admission of evidence that was at most cumulative is not reversible error. *State v. Gordon,* 185 Conn. 402, 426, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State v. Harris,* 182 Conn. 220, 230, 438 A.2d 38 (1980); *Pisel v. Stamford Hospital,* 180 Conn. 314, 327, 430 A.2d 1 (1980). "It is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony." *Kimbrell v. Rossitto,* 6 Conn. App. 638, 653, 507 A.2d 120 (1986), citing *Emhart Industries, Inc. v. Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 391, 461 A.2d 422 (1983).

The question then is was state's exhibit A, the A-44 report, properly admitted.

The plaintiff's first claim is that the arresting officer did not prepare a written report pursuant to Public Acts 1989, No. 89-314 (c) (now codified as § 14-227a [c]). That section refers to the admission of records in a trial for a violation of § 14-227a (operating a motor vehicle while under the influence of liquor or drugs or while impaired by liquor). The plaintiff's hearing was under § 14-227b (implied consent to test; suspension of license for refusing to submit to test or having elevated blood alcohol content at time of operation). Exhibit A, it will be recalled, consists of form A-44, which is the officer's DWI arrest and alcohol test refusal or failure form, together with two attached intoximeter results sworn to by the arresting officer. In any case, exhibit A shows that the officer did prepare the reports so as to meet the criteria listed in § 14-227a.

In his brief before this court, the plaintiff claims that the admission of the A-44 report not only violated the rule against the admission of hearsay evidence but also violated his rights under the fourteenth amendment to the United States constitution. In *Volck* v. *Muzio,* supra, 517–18, the Supreme Court, in interpreting the earlier version of the statute in question, held: "Subsection (c) of § 14-227b prescribed not only that the 'report of such refusal' bear the signature of a witness to the refusal but also that it be sworn to 'by the police officer before whom such refusal was made,' that it set forth the grounds for probable cause to make the arrest and that it state that the arrested motor vehicle operator had refused the officer's request to submit to a prescribed test. Its evident purpose is to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer. Subsection (c) is analagous to other statutes that provide for the admissibility of documents certified by a proper official. See General Statutes § 52-165 (records of corporations and public officers), § 52-166 (orders and regulations of state officials), § 52-167 (corporation certificates attested by the secretary of state)."

The only difference between the statute at the date of the decision in *Volck* v. *Muzio,* supra, and the date of the plaintiff's arrest is that the statute is no longer confined to the situation where the arrestee refused to take a test but now also covers the situation where the arrestee has taken a chemical test and the results of the test show that at the time of the offense the ratio of alcohol in the blood of the arrestee was ten-hundredths of 1 percent or more of alcohol, by weight. This change in the statute in no way changes the rule of *Volck.*

Chapter 54 of the General Statutes, the Uniform Administrative Procedure Act, does not prohibit hearsay evidence as such at an administrative hearing. See General Statutes § 4-178. Further, § 14-227b-18 of the Regulations of Connecticut State Agencies provides: "ATTENDANCE OF ARRESTING OFFICER AT HEARING. (a) At the hearing the commissioner shall not require the presence and testimony of the arresting officer, or any other person, but the hearing officer may make an appropriate order, as authorized by Section 14-110 of the General Statutes, to obtain the testimony of such arresting officer or other witness, if the same appears necessary to make a proper finding on one or more of the issues stated in Section 14-227b (f) of the General Statutes, as amended by Section 1 of Public Act 89-314. (b) A person arrested for an enumerated offense may at his own expense and by his own solicitation summon to the hearing the arresting officer and any other witnesses to give oral testimony. The failure to appear at the hearing of any witness summoned by the person arrested shall not be grounds for such person to request a continuance or dismissal of the hearing. (c) If a person arrested for an enumerated offense wishes to summon to the hearing the arresting officer or any other witness, but such person is indigent, such person must file with the commissioner a sworn affidavit stating facts proving such indigency, at least seven days prior to the hearing. In such case the commissioner shall summon such arresting officer or witness to the hearing."

Section 14-227b-19 of the Regulations of Connecticut State Agencies entitled: "ADMISSIBILITY OF POLICE REPORT AT HEARING" provides: "The written report filed by the arresting officer shall be admissible into evidence at the hearing if it conforms to the requirements of Section 14-227b (c) of the General Statutes." Both these regulations are authorized by § 14-227b (*l*), which provides: "The commissioner of motor vehicle shall adopt regula-

tions in accordance with chapter 54 [the Uniform Administrative Procedure Act] to implement the provisions of this section." The cited regulations recite that they were published in the Connecticut Law Journal on March 20, 1990. It shows that the regulations were adopted effective January 1, 1990, after earlier advertisement and public hearing and approved by the attorney general and the legislative regulation review committee in accordance with General Statutes § 4-170 on January 23, 1990. Ratification of the regulation shows "support for the proposition that the commissioner's regulatory interpretation of the statute 'is part of the general statutory scheme . . . .' " *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 130, 527 A.2d 672 (1987), citing *Texaco Refining & Marketing Co.* v. *Commission,* 202 Conn. 583, 599–600, 522 A.2d 771 (1987); *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 144, 509 A.2d 1050 (1986).

The back of the ticket the plaintiff received at the time of his arrest stated: "Your attorney may be present at an administrative hearing. Also, you may request that the arresting officer and any other officer be present at the hearing, but you must pay any fees for their appearance. Only if you can provide evidence of indigency will the arresting officer be summoned to an administrative hearing at the expense of the Department of Motor Vehicles."

It is true that once granted, a motor vehicle operator's license becomes an entitlement that cannot be taken or suspended without procedural due process as guaranteed by the fourteenth amendment to the United States constitution. *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). The plaintiff had the opportunity to have the arresting officer present. He was represented by counsel who is also a commissioner of the Superior Court and as such had the power to subpoena witnesses to appear and to pro-

duce documents at an administrative hearing. General Statutes § 51-85. No such subpoena was issued nor did the plaintiff's attorney request that the hearing officer summon the officer to testify or request that the hearing officer summon the officer to testify or request that the hearing be postponed so that the plaintiff's attorney could summon the officer.

"Courts 'are bound to assume that the legislature intended, in enacting a particular law, to achieve its purpose in a manner which is both effective and constitutional'; *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981); and this presumption of constitutionality imposes upon the trial court, as well as this court, the duty to construe statutes, whenever possible, in a manner that comports with constitutional safeguards of liberty." *State* v. *Floyd,* 217 Conn. 73, 88, 584 A.2d 1157 (1991). The admission of written reports at an administrative hearing has been upheld against a claim like the plaintiff is making here when the reports are material and the author may be subpoenaed and cross-examined. *Richardson* v. *Perales,* 402 U.S. 389, 410, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The plaintiff's constitutional attack on the statutory procedure is, therefore, overruled.

The plaintiff argues further that the hearing officer's decision is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or . . . arbitrary . . . ." General Statutes § 4-183 (j) (5) and (6). Specifically, the plaintiff argues that in no place in the record is there any evidence that at the time of the offense—i.e., at the time that the plaintiff was operating his motor vehicle—his blood alcohol content exceeded ten-hundredths of 1 percent. He claims further that the results of the intoximeter analysis were insufficient to prove that his blood alcohol content exceeded ten-hundredths of 1 percent *at the time of the offense.*

The Appellate Court has held in an appeal from a criminal conviction for operating while under the influence, § 14-227a, which contains the exact same language as the statute in question in this matter, that expert testimony is needed to relate the blood alcohol content at the time of the tests to the blood alcohol content at the time of the operation of the motor vehicle. *State* v. *Geisler,* 22 Conn. App. 142, 162, 576 A.2d 1283 (1990). In the present case the record establishes that the car operated by the plaintiff was stopped at 12:51 a.m. The plaintiff took intoximeter tests at 1:27 a.m. and at 2:05 a.m. "[T]he legislature, in enacting the per se legislation, contemplated that there would be expert testimony specifically relating the [blood alcohol content] at the time of the tests to [that] at the time of operation of the motor vehicle." Id. *Geisler,* citing *State* v. *Dumont,* 146 Vt. 252, 499 A.2d 787 (1985), points out that Connecticut and Vermont are the only states that require expert extrapolative evidence. *State* v. *Geisler,* supra. Under the regulations implementing this statute, " 'test' means a chemical analysis." Regs., Conn. State Agencies § 14-227b-1 (m). " 'Chemical analysis' means the quantitative analysis by means of direct or indirect measurement or physico-chemical technique performed on a sample of blood, breath or urine of a person." Regs., Conn. State Agencies § 14-227b-1 (a).

A person who is not a subsequent offender would lose his license for "[n]inety days if [that] person submitted to a chemical analysis and the results of such chemical analysis indicate that the person was intoxicated (i.e. 'ten-hundredths of one percent or more . . . .' Regs., Conn. State Agencies § 14-227b-1 [e]) *at the time of the alleged offense. . . .*" (Emphasis added.) Regs., Conn. State Agencies § 14-227b-1 (i) (1). The record in the present case contains nothing that shows that at the time that the plaintiff was operating his car, his blood alcohol content was ten-hundredths of 1 per-

cent or higher. In order to find that such was the plaintiff's condition, the hearing officer and this court would have to construe the statute to make the blood alcohol content at the time of its analysis to be the blood alcohol content at the time of the offense—i.e., the time of operating the car. This, under the statute and case law, neither the hearing officer nor this court can do.

"Two long-standing rules of statutory construction are that a court may not by construction supply omissions in a statute simply because it appears that good reasons exist for adding them; *State* v. *Baker,* 195 Conn. 598, 602, 489 A.2d 1041 (1985); and that a court must construe a statute as it finds it, without reference to whether it thinks the statute would have been or could be improved by the inclusion of other provisions. *Johnson* v. *Manson,* 196 Conn. 309, 315, 493 A.2d 846 (1985)." *Battersby* v. *Battersby,* 218 Conn. 467, 470–71, 590 A.2d 427 (1991).

The only way that the blood alcohol content at the time of the analysis could be related back to the time of the offense is if the hearing officer was an expert in this area and did it. If he had done so, however, he had a responsibility to reveal publicly his special knowledge and experience to give notice on the record of the hearing of the material facts critical to his decisions, so that a person adversely affected thereby had an opportunity for rebuttal at an appropriate stage in the administrative proceedings. *Feinson* v. *Conservation Commission,* 180 Conn. 421, 428–29, 429 A.2d 910 (1980); see also *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 50, 484 A.2d 483 (1984).

The issue before the hearing officer was not whether the plaintiff was in fact guilty of operating while under the influence. The issue before the hearing officer was whether the intoximeter showed that "at the time of

the offense" the plaintiff's blood alcohol content was ten-hundredths of 1 percent or higher.

Since the record is void of anything that shows that at the time of the alleged offense the ratio of alcohol in the blood of the plaintiff was ten-hundredths of 1 percent or more of alcohol, by weight; General Statutes § 14-227b (f) (3); the decision of the defendant to suspend the plaintiff's license based on this record was in violation of the provisions of that statute, in excess of the statutory authority of the agency, clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, arbitrary and an abuse of discretion and/or a clearly unwarranted exercise of discretion. General Statutes § 4-183 (j) (1), (2), (5) and (6).

The plaintiff's appeal, therefore, is sustained and the defendant is ordered to return the plaintiff's original operator's license to him.