TOWN OF TRUMBULL ET AL. *v.* STATE OF CONNECTICUT ET AL.
(13138)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued November 13, 1987—decision released January 26, 1988

*James E. Rice* and *George N. Nichols,* with whom, on the brief, were *J. Charles Mokriski* and *Robert S. Golden, Jr.,* for the appellants-appellees (defendants).

*Stewart I. Edelstein,* with whom, on the brief, was *Mark Anastasi,* for the appellees-appellants (named plaintiff et al.).

*Martin S. Echter,* deputy corporation counsel, for the appellee (intervening plaintiff city of New Haven).

SHEA, J. In this declaratory judgment action, the plaintiff municipalities[1] of Trumbull and Bridgeport sought a determination of (1) whether the defendant public utility companies[2] are entitled to reimbursement for the cost of relocating public service installations situated in a street when ordered to move them by a municipality intending to construct sewers or other pollution abatement facilities, (2) whether the amount of such reimbursement should be calculated in accordance with a formula approved by the state department of environmental protection (DEP), and (3) whether the DEP is obliged to pay 15 percent of the share of the relocation costs to be borne by the municipality. Pursuant to General Statutes § 22a-470,[3] the action was

[1] During the trial court proceedings, the city of Norwalk intervened as a plaintiff but withdrew prior to judgment. The city of New Haven also intervened as a plaintiff and has participated in this appeal as well as in the trial court proceedings. New Haven has briefed and argued only the issue of the formula to be used in calculating the amount of reimbursement to be made to a utility company for relocating its facilities in the course of construction of a municipal sewer project.

[2] The defendant utility companies are The Southern Connecticut Gas Company, The United Illuminating Company, Southern New England Telephone Company, Bridgeport Hydraulic Company and Connecticut Water Company. The state department of environmental protection was also a defendant in the trial court, but has not been involved in this appeal. The federal environmental protection agency was originally named as a party defendant, but the action was later withdrawn as to that defendant.

[3] "[General Statutes] Sec. 22a-470. (Formerly Sec. 25-54yy). RELOCATION OR REMOVAL OF PUBLIC SERVICE FACILITIES AS NECESSARY FOR CONSTRUCTION OF MUNICIPAL SEWER OR POLLUTION ABATEMENT FACILITIES. Whenever a municipality obtains a grant under this chapter for the construction, rebuilding, expansion or acquisition of sewers or other pollution abatement facilities and where the carrying out of such construction, rebuilding, expansion or acquisition requires the temporary or permanent readjustment, relocation or removal of a public service facility from a street or public right-of-way, the municipality shall issue an appropriate order to the company owning or operating such facility and such company shall permanently or temporarily readjust, relocate or remove such facility promptly in accordance with such order, provided an equitable share of the cost of such readjustment, relocation or removal of said public service facility, including the cost of installing and constructing a facility equal in capacity in a new location, shall be borne by the municipality. Such equitable share shall be one

referred to a state referee, *Hon. George A. Saden,* who reported his findings and recommendations to the trial court, *Jacobson, J.* In accordance with the recommendations of the referee, the trial court rendered a declaratory judgment (1) that the defendants were entitled to reimbursement for utility relocations occurring after June 19, 1979, pursuant to General Statutes § 22a-470, (2) that the DEP formula should be used in calculating the amount of reimbursement to the utility companies, and (3) that it would be inappropriate to render a declaratory judgment concerning the share of the relocation costs to be paid by the DEP, "since the law already provides for such reimbursement if proper conditions have been satisfied."

hundred per cent of such cost after the deductions hereinafter provided. In establishing the equitable share of the cost to be borne by the municipality, there shall be deducted from the cost of the readjusted, relocated or removed facilities a sum based on a consideration of the value of materials salvaged from existing installations, the cost of the original installation, the life expectancy of the original facility and the unexpired term of such useful life. For the purposes of determining the equitable share of the cost of such readjustment, relocation or removal, the books and records of the company shall be available for the inspection of the municipality. When any facility is removed from a street or public right-of-way to a private right-of-way, the municipality shall not pay for such right-of-way. If the municipality and the company owning or operating such facility cannot agree upon the share of the cost to be borne by the municipality, either may apply to the superior court for the judicial district in which the street or public right-of-way is situated or, if the court is not in session, to any judge thereof for a determination of the cost to be borne by the municipality, and such court or judge after causing notice of the pendency of such application to be given to the other party, shall appoint a state referee to make such determination. Such referee, having given at least ten days' notice to the parties interested of the time and place of the hearing, shall hear both parties, shall take such testimony as such referee may deem material and shall thereupon determine the amount of the cost to be borne by the municipality and forthwith report to the court. If the report is accepted by the court, such determination shall, subject to right of appeal as in civil actions, be conclusive upon such parties. As used in this section, 'public service facility' includes any sewer, pipe, main, conduit, cable, wire, tower, building or a utility appliance owned or operated by an electric, gas, telephone, telegraph, water or community antenna television service company."

The defendants have appealed from the judgment, claiming error in the decision that the DEP formula should be used for determining the portion of their relocation costs to be reimbursed by the towns and in several related rulings. The towns have cross appealed, claiming error in the decision that the defendants are entitled to reimbursement under § 22a-470. The refusal of the court to render a declaratory judgment concerning the share of relocation costs to be borne by the DEP has not been challenged. We find no error in either the appeal or the cross appeal.

The parties presented a written stipulation of the pertinent facts to the state referee. In 1975, the town of Trumbull and the city of Bridgeport began to plan a joint sewer treatment system, known as the Bridgeport-Trumbull Interceptor Sewer Project, in order to extend underground sanitary sewer lines from Trumbull through Bridgeport. An application for funding of the project was submitted to the federal environmental protection agency (EPA) through the appropriate state agency, the DEP. Under the Federal Water Pollution Control Act of 1972; Pub. L. No. 92-500, 33 U.S.C. § 1281 et seq. (1976); a grant of federal funds for the project equal to 75 percent of allowable project costs was available and the EPA approved the grant application in June, 1977. Under General Statutes § 22a-439, the DEP may grant to a municipality for a sewer construction project eligible for federal funding an additional 15 percent of the cost of the project from state funds, leaving the municipality to bear the remaining 10 percent. On October 20, 1980, the DEP agreed to provide 15 percent of the cost of the Bridgeport-Trumbull Interceptor Sewer Project to be constructed in accordance with plans and specifications which the DEP had approved on August 22, 1977.

Construction of the sewer project began after the EPA had approved the grant application in June, 1977.

On September 27, 1978, two of the defendants, a gas company and a water company, were ordered to relocate their mains, but they appealed this order pursuant to General Statutes § 16-235 to the public utilities control authority (PUCA), the predecessor of our department of public utility control (DPUC). The PUCA, on June 29, 1979, sustained the appeal, declaring the city of Bridgeport responsible for the relocation costs and ordering the utility companies to make no further relocations without receiving reimbursement pursuant to § 22a-470, which had been enacted and became effective on June 19, 1979. The city appealed from this order, but the appeal was withdrawn pursuant to a stipulation executed by the city and the two companies, to which the town of Trumbull consented. The DPUC approved this settlement agreement on April 12, 1983, and modified its previous order concerning relocations so that it would not apply to any relocation of facilities made prior to June 19, 1979, the effective date of § 22a-470.

After the PUCA had issued its order prohibiting relocations without reimbursement by the municipalities, a dispute arose over the formula to be used in determining the amount to be paid to the utility companies. The municipalities proposed to use a formula approved by the DEP while the companies insisted upon a formula devised by the department of transportation (DOT) that had been used for many years in calculating the reimbursement of utility companies pursuant to General Statutes § 13a-126 for relocating their facilities as a result of highway construction projects. On October 20, 1981, the DPUC issued a decision ordering the companies to proceed with the relocations as ordered by the city of Bridgeport on the basis of an agreement of the municipalities to reimburse them in accordance with the DEP formula and also to pay any additional amounts that might be required by the ruling

of the Superior Court in this action, which had been filed on June 29, 1986. The relocation work has proceeded under this arrangement.

I

When the plaintiff municipalities filed the original complaint in this action on May 15, 1981, the prayer for relief sought a declaratory judgment only with respect to the proper formula to be used in determining the "equitable share" of the relocation costs to be reimbursed to the utility companies. Not until January 30, 1985, when a motion to amend the complaint for the third time was filed, did the plaintiffs seek a determination of whether the statute relied upon to support the defendants' claims for reimbursement, § 22a-470, effective on June 19, 1979, was applicable to the Bridgeport-Trumbull Interceptor Sewer Project, for which a federal grant application had been approved in June, 1977. The state referee concluded that, because the federal grant application for the project had been approved in June, 1977, prior to the enactment of § 22a-470, the statute could not be applied retroactively to allow reimbursement to the utility companies even for work performed after the statute had become effective. He found, nevertheless, that the municipalities had contracted to reimburse the utility companies pursuant to the statute and thus had waived its retroactive application. In attacking this conclusion on appeal, the plaintiffs maintain (1) that any such waiver was inoperative for lack of consideration, (2) that a municipality cannot effectively waive its immunity from liability for the performance of governmental acts, and (3) that it is contrary to public policy to uphold such a waiver.

The utility companies have presented several alternative grounds to support the determination that they are entitled to be reimbursed pursuant to § 22a-470 for relocations occurring after its enactment, including an

attack upon the referee's conclusion that such reimbursement would result in retroactive application of the statute. We need not consider these grounds, however, because we have determined that the referee's conclusion of contractual "waiver" is adequately supported by the evidence. The trial court, similarly, found it unnecessary to consider the referee's conclusion that the plaintiffs' sewer project would have been exempt from the reimbursement provisions of § 22a-470 but for the agreement of the municipalities to make such reimbursement.

In five written agreements with individual utility company defendants during the period June 10, 1982, to March 30, 1985, the municipalities agreed to reimburse them for relocations pursuant to § 22a-470, subject to the ultimate determination of the appropriate formula in this litigation. On October 8, 1980, the city engineer of Bridgeport sent letters to three utility companies concerning a meeting to discuss relocation eligibility for federal funding in which he indicated that payment by the municipalities would be made pursuant to the DEP formula. When the DPUC, on October 20, 1981, revised its previous order to allow utility relocations to proceed, subject to the determination of the appropriate formula for reimbursement in this action, it expressly relied upon the agreement of the municipalities "to reimburse the companies on an ongoing basis according to the DEP formula and to pay any additional sums if required by the ruling of the Superior Court." There is ample evidence to support the finding of the referee, adopted by the trial court, that the municipalities had "entered into contracts wherein they agreed the utilities were entitled to reimbursement" under § 22a-470 for relocation work performed after its effective date.

Although the term "waiver" has been used by the referee as well as the utility companies in characteriz-

ing this claim based upon the promises contained in various agreements with the municipalities, the waiver found is a necessary consequence of the contractual provisions requiring the municipalities to pay for relocations in accordance with the statute. It is not an implied waiver but follows inescapably from the finding that the municipalities have agreed to make reimbursement in accordance with the statute. For this reason we need not consider whether waiver analysis may be applied to a contemporaneous provision of a contract or whether this kind of waiver would require consideration for its validity, apart from that which supports the contracts. "There is no consideration problem because that promise is supported by the same consideration as supports the other promises of the [contract]." J. Calamari & J. Perillo, Contracts (3d Ed.) § 11-30, p. 492; see E. Farnsworth, Contracts § 8.5.

The municipalities contend that there was no consideration given for the interim agreements for performance of the work containing their promise of reimbursement under the statute or for the agreement pursuant to which the DPUC order prohibiting the utility companies from proceeding with relocations was modified. The mutual promises contained in these agreements, from which the municipalities have obtained the benefit of proceeding with their sewer project without the delay that otherwise would have attended the resolution of their dispute, adequately satisfied the consideration requirement. "An exchange of promises is sufficient consideration to support a contract." *Osborne* v. *Locke Steel Chain Co.,* 153 Conn. 527, 531, 218 A.2d 526 (1966).

The case relied upon by the plaintiffs in arguing that a municipality cannot waive its immunity from liability for the performance of governmental acts; *Gauvin* v. *New Haven,* 187 Conn. 180, 445 A.2d 1 (1982); does not support that proposition. Furthermore, the doctrine

of governmental immunity is not a restriction upon the authority of a municipality to enter into a contract within the scope of its corporate powers. See *Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 123, 348 A.2d 651 (1974).

The claim that it is contrary to public policy to infer a waiver of the municipalities' belated claim that the statute should not be applied to their sewer project, which had commenced before its effective date, is similarly without merit. There is no public policy against the settlement of a disputed claim by any party, whether or not a municipality, on terms deemed advantageous at the time, even though the compromise may later, with the benefit of hindsight, appear improvident. Whether the resolution of the dispute accepted by the municipalities in their agreement with the utility companies was wise or foolish we need not determine.

II

Under the provisions of § 22a-470, a company ordered to relocate or remove a public service facility from a street must comply with such order, but "an equitable share of the cost of such readjustment, relocation or removal of said public service facility, including the cost of installing and constructing a facility equal in capacity in a new location, shall be borne by the municipality." The statute further provides that "[i]n establishing the equitable share of the cost to be borne by the municipality, there shall be deducted from the cost of the readjusted, relocated or removed facilities a sum based on a consideration of the value of materials salvaged from existing installations, the cost of the original installation, the life expectancy of the original facility and the unexpired term of such useful life." Virtually identical language is used in General Statutes § 13a-126[4] in setting forth the method for calculating

---

[4] "[General Statutes] Sec. 13a-126. REMOVAL OR RELOCATION OF PUBLIC SERVICE FACILITIES FOR HIGHWAY CONSTRUCTION. As used in this sec-

the "equitable share" to be borne by the state of the cost of relocating public service facilities when necessitated by the construction of a state highway. Under that statute, which long preceded § 22a-470, the DOT

tion, 'public service facility' includes any sewer, pipe, main, conduit, cable, wire, pole, tower, building or utility appliance owned or operated by any electric, gas, telephone, telegraph, water or community antenna television company, or any municipal government or department or subdivision thereof. Whenever the commissioner determines that any public service facility located within, on, along, over or under any land comprising the right-of-way of a state highway or any other public highway when necessitated by the construction or reconstruction of a state highway shall be readjusted or relocated in or removed from such right-of-way, he shall issue an appropriate order to the company, corporation or municipality owning or operating such facility, and such company, corporation or municipality shall readjust, relocate or remove the same promptly in accordance with such order; provided an equitable share of the cost of such readjustment, relocation or removal, including the cost of installing and constructing a facility of equal capacity in a new location, shall be borne by the state. Such equitable share, in the case of or in connection with the construction or reconstruction of any limited access highway, shall be the entire cost, less the deductions hereinafter provided, and, in the case of or in connection with the construction or reconstruction of any other state highway, shall be such portion or all of the entire cost, less the deductions hereinafter provided, as may be fair and just under all the circumstances, but shall not be less than fifty per cent of such cost after the deductions hereinafter provided. In establishing the equitable share of the cost to be borne by the state, there shall be deducted from the cost of the readjusted, relocated or removed facilities a sum based on a consideration of the value of materials salvaged from existing installations, the cost of the original installation, the life expectancy of the original facility and the unexpired term of such life use. When any facility is removed from the right-of-way of a public highway to a private right-of-way, the state shall not pay for such private right-of-way, provided, when a municipally-owned facility is thus removed from a municipally-owned highway, the state shall pay for the private right-of-way needed by the municipality for such relocation. If the commissioner and the company, corporation or municipality owning or operating such facility cannot agree upon the share of the cost to be borne by the state, either may apply to the superior court for the judicial district within which such highway is situated, or, if said court is not in session, to any judge thereof, for a determination of the cost to be borne by the state, and said court or such judge, after causing notice of the pendency of such application to be given to the other party, shall appoint a state referee to make such determination. Such referee, having given at least ten days' notice to the parties interested of the time and place of the hearing, shall hear

has for many years reimbursed utility companies in accordance with a formula[5] that ignores the factor of inflation in determining the value of the expired useful life of a facility that has been removed or relocated.

The DEP has refused to follow the DOT formula in deciding the amount of the "equitable share" of the cost to be reimbursed pursuant to § 22a-470, despite the use of language similar to that contained in § 13a-126. The DEP has devised a formula[6] that in effect trans-

both parties, shall view such highway, shall take such testimony as such referee deems material and shall thereupon determine the amount of the cost to be borne by the state and forthwith report to the court. If the report is accepted by the court, such determination shall, subject to right of appeal as in civil actions, be conclusive upon both parties."

[5] The DOT formula determines the reimbursement for utility relocations by subtracting from the net relocation costs a "depreciated reserve," which is calculated as follows:

$$\text{Depreciated Reserve} = \frac{\text{Years of used life}}{\text{Years of expected life}} \times \text{Original cost of construction}$$

The following example illustrates the application of the formula for a facility with the following data:

Total cost of replacement installation . . . . . . . . . . . . . . . . . . . . $100,000
Less Salvage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,000
Net cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 90,000
Original cost when installed 25 years ago with estimated useful life of 50 years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 50,000
Depreciated Reserve $\frac{25 \text{ years}}{50 \text{ years}} \times \$50,000 = \ldots \ldots \ldots \ldots \ldots$ $ 25,000
Reimbursement $90,000 (net cost) − $25,000 (depreciated reserve) = . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 65,000

[6] The DEP formula is explained by the referee as follows:

"The DEP formula reads algebraically something like this: $R = A - (B \times C \times D) - E$. R is the reimbursement to utilities; A is relocation costs; B is cost of original installation; C is expired useful life divided by life expectancy of original facility; D is a factor for inflation; and E is value of salvage. The inflation factor is commonly accepted in the construction industry as the proper standard for bringing to current value the cost of construction done since 1900."

The DEP formula also provides for a minimum reimbursement to a utility company of 20 percent of the current cost of the new installation, regard-

lates the original cost of the installation into contemporary dollars. The practical result of the DEP formula is that the municipalities will be obliged to pay much less to the utility companies for relocations than the state has been paying under the DOT formula in connection with highway construction.

The utility companies recognize that the DEP, and not the DOT, has jurisdiction to apply and interpret § 22a-470 in processing applications for sewers under General Statutes § 22a-439. See General Statutes §§ 22a-424 (*l*), 22a-439 (c). They maintain, nevertheless, that the DOT formula must be followed (1) because it represents a long-standing administrative interpretation of § 13a-126, a statute within the jurisdiction of the DOT, from which the legislature appears to have extracted the language used in § 22a-470 to define the "equitable share" of relocation costs to be borne by the municipalities, and (2) because the DEP injects into the calculation of "equitable share" an element, inflation, that is not mentioned in the statute.

This court has recognized the well established principle that great deference should be accorded to the construction given a statute by the agency charged with its enforcement. *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 129, 527 A.2d 672 (1987); *Board*

---

less of the age of the replaced facility. This provision has not been challenged in this litigation.

Using the same figures as those in the example given in footnote 5, supra, and assuming an inflation factor of 2.0 over the twenty-five year period, the calculation of the reimbursement would be as follows:

$$(B \times C \times D) = \$50{,}000 \text{ original cost} \times \frac{25 \text{ years}}{50 \text{ years}} \times 2.0 \text{ inflation factor} = \$50{,}000$$

$$\text{Reimbursement} = \$100{,}000 \text{ (new cost)} - \$10{,}000 \text{ (salvage)} - \$50{,}000 \\ (B \times C \times D) = \$40{,}000$$

A 2.0 inflation factor represents a doubling of construction costs over the twenty-five year period, corresponding to a 100 percent rate of inflation for that period or an uncompounded rate of 4 percent per year.

*of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241, 460 A.2d 1255 (1983). This rule is not helpful to the utility companies, however, because the DOT is not responsible for the administration of § 22a-470. The DEP has that responsibility.

The companies also rely upon the circumstance that the legislature has made several amendments to § 13a-126 since the DOT formula has been in effect, none of which has modified the interpretation of the statute embodied in that formula. See Public Acts 1967, No. 671; Public Acts 1976, No. 76-133; Public Acts 1978, No. 78-280, § 2; Public Acts 1982, No. 82-472. These amendments, however, were unrelated to the statutory definition of "equitable share" and, in addition to technical changes necessitated by court reorganization, merely revised other portions of the statute with respect to the kinds of projects and utility installations to which it applied. It is fanciful to presume that the legislature in enacting them gave any consideration to the manner in which the DOT had been implementing the statutory definition of "equitable share." There is no legislative history to suggest that the General Assembly was even aware of the DOT formula at the time of these amendments.

The companies rely principally on the "plain wording" of § 22a-470, which they maintain precludes consideration of inflation as an element in determining the amount of reimbursement for relocations. In specifying the method for calculating the municipality's "equitable share" of the cost of relocation, including the cost of the new installation, the statute specifies that from the total cost there shall be deducted "a sum based on a consideration of the value of materials salvaged from existing installations, the cost of the original installation, the life expectancy of the original facility and the unexpired term of such useful life." The statute mentions the various factors that are to be considered in

reaching the "equitable share" goal, but does not set forth a mathematical formula precisely specifying how these factors are to be applied in making the calculation. The evident purpose of the statute is to reimburse the utility companies fully for the cost of relocation, but not to confer upon them, without allowance therefor, the benefit of receiving a new facility with a far greater remaining useful life expectancy than that which has been replaced. Any formula complying with the statute must be based upon a consideration of the factors specified in the statute but must also satisfy the requirement that the share of the cost to be borne by the municipality be "equitable." If the application of a particular formula results in a windfall to a utility company at the expense of a municipality, that formula does not achieve the statutory objective of imposing only an "equitable share" of the cost of relocation upon the municipality.

It is quite apparent that to ignore the effect of inflation, as the DOT formula does, in determining a municipality's share of the cost of relocating a facility that was installed many years ago, when the cost of such an installation was a fraction of its present cost, must inevitably result in substantial overpayments to utility companies and correspondingly excessive burdens upon municipalities. This inequity results from the failure to evaluate the additional useful life that the new facility has added to the remaining useful life of the replaced facility in accordance with the current cost of the new facility. To use historical costs of facilities installed many years ago in the same calculation with current costs of replacing those facilities results in a distortion comparable to adding apples and oranges.

The utility companies do not advance any arguments that seriously militate against the referee's characterization of the amount of their reimbursement under the DOT formula as a windfall. They claim, neverthe-

less, that the absence of any reference to inflation in § 22a-470 as one of the factors to be taken into consideration precludes its use in the DEP formula. They assume that the "cost of the original installation," referred to in the statute as one of the factors to be considered, is equivalent to the "original cost of the installation." The phrase "cost of the original installation" does not preclude the translation of that cost into current dollars, as achieved by the inflation adjustment used in the DEP formula, so long as the result more closely fulfills the legislative intention to impose no more than an "equitable share" of the relocation costs upon the municipalities. Common sense, after all, is a highly significant guide to statutory interpretation. We agree with the referee and the trial court that the DEP formula may properly be applied to measure the "equitable share" of relocation costs that § 22a-470 allocates to the municipalities.

Because we have concluded that the trial court did not err in holding that the DEP formula could appropriately be applied in calculating the amounts to be reimbursed under § 22a-470, we need not consider the claim of error relating to the admission of a letter from EPA officials for the purpose of showing that they would approve the use of the DEP formula, but not the DOT formula, in calculating the costs of the project for the purpose of the federal grant to the municipalities. Whether this additional ground, upon which the referee and trial court partly relied, would provide an additional ground to affirm the judgment is a question we leave for another day.

There is no error.

In this opinion the other justices concurred.