TOWN OF PRESTON ET AL. *v.* DEPARTMENT
OF ENVIRONMENTAL PROTECTION ET AL.
(14185)

SHEA, GLASS, COVELLO, HULL and BORDEN, Js.

Argued February 22—decision released May 21, 1991

*Kathleen Eldergill,* for the appellants (plaintiffs).

*Robert B. Teitelman,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (named defendant).

*Francis J. Brady,* with whom were *Roger E. Koontz, Elizabeth C. Barton* and, on the brief, *Mary Adamowicz* and *Mark R. Sussman,* for the appellees (defendant Connecticut Resources Recovery Authority et al.).

HULL, J. The defendants Connecticut Resources Recovery Authority, Southeastern Connecticut Regional Resources Recovery Authority[1] and American Ref-Fuel Company (the defendants)[2] filed applications with the defendant Connecticut department of environmental protection (DEP) for three permits necessary to construct a proposed resources recovery

---

[1] The Connecticut Resources Recovery Authority (CRRA) is a body established to implement the Solid Waste Management Services Act. General Statutes § 22a-257 et seq.; see General Statutes §§ 22a-261, 22a-262. The CRRA has delegated responsibility for solid waste management in southeastern Connecticut to the Southeastern Connecticut Regional Resources Recovery Authority (SCRRRA). See General Statutes §§ 22a-260 (18), 22a-275.

[2] We refer to the Connecticut Resources Recovery Authority, the Southeastern Connecticut Regional Resources Recovery Authority and American Ref-Fuel Company collectively as the defendants. Where necessary to distinguish among these defendants, we refer to them as CRRA, SCRRRA and Ref-Fuel, respectively.

facility[3] (the facility) in the plaintiff town of Preston. See General Statutes § 22a-208a (solid waste construction permit); § 22a-174 (c) (air emissions permit); § 22a-430 (a) (water discharge permit).[4] Pursuant to

---

[3] " 'Resources recovery facility' means a facility utilizing processes to reclaim energy from solid wastes." General Statutes § 22a-219a.

[4] General Statutes § 22a-208a provides in pertinent part: "(a) The commissioner of environmental protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and upon submission of such information as he may require, for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter. . . .

"(b) No solid waste facility shall be built or established and no solid waste facility without a permit to construct shall be altered after July 1, 1971, until the plan, design and method of operation of such facility have been filed with the department and approved by the commissioner by the issuance of a permit to construct, provided, nothing in this chapter or chapter 446e shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal. The commissioner shall send a written notification of any application for a permit to construct to the chief elected official of each municipality in which the proposed facility is to be located, within five business days of the date on which any such application is filed. . . ."

General Statutes § 22a-174 (c) provides in pertinent part: "The commissioner shall have the power, in accordance with regulations adopted by him, (1) to require that a person, before undertaking the construction, installation, enlargement or establishment of a new air contaminant source specified in the regulations adopted under subsection (a), submit to him plans, specifications and such information as he deems reasonably necessary relating to the construction, installation, enlargement, or establishment of such new air contaminant source; (2) to issue a permit approving such plans and specifications and permitting the construction, installation, enlargement or establishment of the new air contaminant source in accordance with such plans, or to issue an order requiring that such plans and specifications be modified as a condition to his approving them and issuing a permit allowing such construction, installation, enlargement or establishment in accordance therewith, or to issue an order rejecting such plans and specifications and prohibiting construction, installation, enlargement or establishment of a new air contaminant source in accordance with the plans and specifications submitted . . . ."

General Statutes § 22a-430 (a) provides in pertinent part: "No person or municipality shall initiate, create, originate or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner. . . ."

General Statutes § 22a-19 (a),[5] the plaintiffs, the town of Preston, Citizens for Alternatives to the Incineration of Refuse, the Mohegan Indian Tribe and Nation, John E. Hamilton and Eleanor C. Fortin, intervened as parties in the administrative proceeding. Following public hearings, the commissioner of environmental protection (the commissioner) granted the defendants' applications for a solid waste construction permit and an air emissions permit.[6] The plaintiffs appealed to the Superior Court, which dismissed the appeal on its merits. The plaintiffs thereafter appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023. We affirm.

The plaintiffs claim that the trial court should have concluded that the commissioner improperly granted the defendants' applications for a solid waste construction permit and an air emissions permit.

I

The plaintiffs first claim that the trial court should have concluded that the defendants' application for a solid waste construction permit was improperly granted by the commissioner. According to the plaintiffs,

---

[5] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

[6] With respect to the application for a water discharge permit, the commissioner ordered the defendants to submit their construction plans and specifications to the water compliance unit of the DEP for review. The commissioner stated that, following review and approval of the plans and specifications by the water compliance unit and construction of the facility in accordance with such approval, a water discharge permit would be issued.

because the application was incomplete, the commissioner was prohibited from granting it. The plaintiffs also argue that because the defendants failed to demonstrate that a parent company of the defendant Ref-Fuel, Browning-Ferris Industries, Inc. (BFI), had not repeatedly violated pertinent statutes, the application should have been denied.

A

We first address the plaintiffs' assertion that the defendants' application for a solid waste construction permit was incomplete and that, therefore, the commissioner was precluded from granting it. According to the plaintiffs, § 22a-209-4 (b) of the Regulations of Connecticut State Agencies,[7] requires that specific

[7] Section 22a-209-4 (b) of the Regulations of Connecticut State Agencies provides in pertinent part: "The information required to be in an application for a permit to construct shall depend upon the type of solid waste facility proposed. Such information shall be outlined in these regulations and further detailed in guidelines prepared by the Department. The information in the application must be sufficient to demonstrate the ability of the facility to comply with the requirements of these regulations. An application will not be deemed complete until all information required by statutes or regulations or otherwise requested by the Commissioner have been submitted in proper form.

"(1) Application for each solid waste facility permit to construct shall be made by the owner or operator of the facility on forms furnished by the Commissioner and signed by the owner and, if the applicant is the operator, the operator, and shall include but not be limited to the following as the Commissioner deems necessary:

"Information required by the Rules of Practice of the Department; name and address of the operator, owner, and, if the operator or owner is a business entity, the names and addresses of all parent and subsidiary corporations, partners, corporate officers and directors, stockholders holding more than fifty percent of the stock of the corporation; a list of all solid waste facilities which each of the above persons are or have been associated with and their positions and responsibilities; name and address of the agent for service; facility location; type of facility; type of proposal (e.g. new facility, expansion or other alteration); a list of other permits required for the facility; an explanation of how the proposal relates to the State Solid Waste Management Plan; information as to the financial stability of the applicant; a commitment to post the proper surety if required by these regulations;

information be included in every application for a solid waste construction permit and that, therefore, the absence of certain of this information from the defend-

a copy of any lease, deed or other agreement regarding the ownership, control or use of the facility; a list of any outstanding administrative orders against the facility; a list of supporting materials submitted with the application; and any other information which the Commissioner deems necessary.

"(2) A facility plan, including engineering studies and proposals, shall accompany the application and be prepared by an engineer licensed to practice in the State of Connecticut; shall contain sufficient information to demonstrate an ability to comply with these regulations; and shall include but not be limited to the following information and supporting materials as the Commissioner deems necessary and as further detailed in engineering guidelines provided by the Commissioner:

"(A) For solid and special waste disposal areas:

"(i) a detailed area map at a scale and contour interval approved by the Commissioner which shall depict the site and surroundings within one-half mile, noting natural and artificial features and land use; including but not limited to all structures and overhead and underground utilities and a statement by each affected utility that the proposed activity adequately protects these utilities in compliance with applicable standards;

"(ii) detailed site maps at a scale and contour interval approved by the Commissioner depicting all items specified in (A) (i) above and existing, site preparation, and final grades, property boundaries, existing and proposed fill limits including location of fill limit markers, soil boring and monitoring locations, proposed structures on site, access and site roads, fencing, buffer zones and screening;

"(iii) cross sections through the site, at a minimum of one parallel and one perpendicular to ground water flow, depicting existing, site preparation and final grades and elevation and flow direction of ground water, type and structure of bedrock and type and location of soils.

"(iv) supplemental maps and plans not prepared as part of the engineering study but used as reference materials for engineering and operational interpretations;

"(v) hydrogeologic and geologic information including predictions of movement of and impact on surface and ground water, including water supply wells, from existing and proposed site activities, and the names and addresses of all landowners within the area of potentially impacted ground waters, detailed soil boring logs; details of monitor well construction and development, the method of testing and testing results;

"(vi) operational plans suitable for field use by the operator including but not limited to details of construction, sequence of fill, a list of the type and amount of equipment and the number and responsibilities of staff, daily operations, traffic flow, controls necessary to protect the public health,

ants' application rendered the application incomplete and precluded issuance of a solid waste permit.[8] We do not agree.

Section 22a-209-4 (b) provides in pertinent part: "The information required to be in an application for a permit to construct shall depend upon the type of solid waste facility proposed. . . . An application will not be deemed complete until all information required by statutes or regulations or otherwise requested by the Commissioner have [sic] been submitted in proper form.

safety and welfare, emergency procedures, communications equipment, regular maintenance schedules, information to be recorded and recording procedures, and methods of measuring waste, and monitoring parameters and schedule;

"(vii) a discussion of expected site life and post-closure use; and

"(viii) any other information which the Commissioner deems necessary.

"(B) For transfer stations, resources recovery facilities or other volume reduction plants, and biomedical waste treatment facilities:

"(i) all applicable information required under Section 22a-209-4 (b) (2) (A) of these regulations;

"(ii) detailed drawings and specifications of site structures, all fixed and transport equipment, methods of volume reduction and storage, and a discussion of utility provision;

"(iii) approximate volume of each waste type to be handled, a list of types of facility users and municipalities served, associated facilities for the ultimate disposal of the wastes, residues, and recycled materials, and contingency plans for periods of shut down or breakdown;

"(iv) a copy of all facility operation and maintenance manuals, and a discussion of: OSHA requirements and how these requirements will be met, materials and energy balance as appropriate, proposed performance tests, system reliability and redundancy/backup system, operation and maintenance budget; and

"(v) any other information which the Commissioner deems necessary."

[8] The plaintiffs' assertion that the defendants' application was incomplete is based on the absence of the following: (1) a list of solid waste facilities with which Ref-Fuel is associated; (2) information as to Ref-Fuel's financial stability; (3) hydrogeologic and geologic information about the facility, specifically, the proposed location of soil borings and information about the soil pertaining to foundation design; (4) detailed information concerning the operation and maintenance of the facility; and (5) information identifying the location for the ultimate disposal of ash residue and bypass waste produced by the facility. See Regs., Conn. State Agencies § 22a-209-4 (b).

(1) Application for each solid waste facility permit to construct . . . *shall include but not be limited to the following as the Commissioner deems necessary . . . .*" (Emphasis added.) This language is followed by a comprehensive list of items that relate to all solid waste facilities. Section 22a-209-4 (b) thereafter provides: "(2) A facility plan, including engineering studies and proposals, shall accompany the application . . . and *shall include but not be limited to the following information and supporting materials as the Commissioner deems necessary . . . .*" (Emphasis added.) This language is followed by two specific lists of items. The first applies to "solid and special waste disposal areas," while the second applies to "transfer stations, resources recovery facilities or other volume reduction plants, and biomedical waste treatment facilities." Regs., Conn. State Agencies § 22a-209-4 (b) (2) (A) and (B).

The plaintiffs argue that use of the phrase "shall include" in the prefatory language of § 22a-209-4 (b) (1) and (2) requires that every application for a solid waste construction permit include each item set forth in § 22a-209-4 (b) (1) and, if applicable, each item set forth in § 22a-209-4 (b) (2) (A) or (B). It is quite plausible, however, that the phrase "as the Commissioner deems necessary" modifies "shall include" and that, therefore, an application for a solid waste construction permit "shall include" the information set forth only if the commissioner deems it necessary. Nevertheless, the plaintiffs maintain that the phrase "as the Commissioner deems necessary" modifies only the phrase "but not be limited to the following" and that, therefore, any discretion that the phrase imparts to the commissioner is restricted to determining whether an application will be limited to the information set forth in the regulation.

Because § 22a-209-4 (b) is subject to two plausible interpretations, it requires our construction. As is true

in every case involving the construction of a statute, our starting point must be the language employed.[9] *King* v. *Board of Education,* 203 Conn. 324, 332, 524 A.2d 1131 (1987); *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 366, 446 A.2d 3 (1982). "The test for determining whether the use of the word 'shall' is mandatory or directory is 'whether the prescribed mode of action is of the essence of the thing to be accomplished.' *Vartuli* v. *Sotire,* 192 Conn. 353, 360, 472 A.2d 336 (1984). That test must be applied with reference to the purpose of the statute. See id." *LeConche* v. *Elligers,* 215 Conn. 701, 710, 579 A.2d 1 (1990).

General Statutes § 22a-208a (a), part of the legislative scheme that § 22a-209-4 was designed to implement; see General Statutes § 22a-209; provides: "The commissioner of environmental protection may issue, deny, modify, renew, suspend, revoke or transfer a permit, under such conditions as he may prescribe and *upon submission of such information as he may require,* for the construction, alteration and operation of solid waste facilities, in accordance with the provisions of this chapter and regulations adopted pursuant to this chapter." (Emphasis added.) The legislature intended, therefore, that the decision of what information must be included in a solid waste construction permit application is, ultimately, a matter within the commissioner's discretion.

Furthermore, by rendering a decision on the defendants' application, despite the fact that the application did not include every item of information set forth in the regulation, the commissioner implicitly interpreted

---

[9] Our rules of statutory construction apply to administrative regulations. See *Dugas* v. *Lumbermens Mutual Casualty Co.,* 217 Conn. 631, 641, 587 A.2d 415 (1991); see also *Plastic Distributors, Inc.* v. *Burns,* 5 Conn. App. 219, 228, 497 A.2d 1005 (1985).

§ 22a-209-4 (b) as requiring the application for a solid waste construction permit to include only the information that he deemed necessary. We accord great deference to the construction of a provision given by the administrative agency charged with the provision's enforcement. *Trumbull* v. *State,* 206 Conn. 65, 77, 537 A.2d 431 (1988); *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 128–29, 527 A.2d 672 (1987). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).

Considering the comprehensiveness of the lists set forth in § 22a-209-4 (b), construction of the section as the plaintiffs suggest would elevate form over substance by requiring the inclusion of information in an application in cases where the commissioner, in his discretion, deems such information either unnecessary or superfluous. " '[W]here a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to "bizarre results" destructive of that purpose, the former should prevail.' *State* v. *Williams,* 206 Conn. 203, 210, 536 A.2d 583 (1988)." *State* v. *Uretek, Inc.,* 207 Conn. 706, 719, 543 A.2d 709 (1988).

We conclude that, because the purpose of § 22a-209-4 (b) is to ensure that the commissioner has an adequate basis upon which to render a decision on a solid waste construction permit application and because both the legislature and the commissioner have determined that the commissioner is in the best position to decide what information is necessary under the circumstances of each case, the more reasonable inter-

pretation of § 22a-209-4 (b) is that an application thereunder must include only those items set forth that the commissioner deems necessary.

### B

The plaintiffs next assert that because the defendants failed to demonstrate that BFI, a parent company of Ref-Fuel, had not repeatedly violated pertinent statutes, their application for a solid waste construction permit should have been denied. We disagree.

Section 22a-209-4 (d) (1) (D) of the Regulations of Connecticut State Agencies provides in pertinent part: "(1) The Commissioner shall issue a permit to construct or to operate upon receipt of satisfactory evidence from the applicant that . . . (D) the owner or operator of the facility or, if the owner or operator is a business entity, a parent or subsidiary corporation . . . has not repeatedly violated pertinent statutes, regulations, orders or permit terms or conditions at any solid waste facility."

In support of their position, the plaintiffs assert that, pursuant to § 22a-209-4 (d) (1) (D), evidence of the following precluded the commissioner from issuing a solid waste construction permit to the defendants: BFI had been ordered to cease operations and alter its methods of operation at various waste disposal sites. BFI had been the subject of investigation in connection with enforcement actions involving hazardous waste disposal. Administrative proceedings involving the discharge of materials into the environment were pending against BFI. BFI was a named defendant in a pending civil action that alleged price fixing for waste services. After considering this evidence, the commissioner determined that BFI's compliance history did not warrant denial of the defendants' application for a solid waste construction permit.

In reviewing a decision of an administrative agency, we will reverse the decision upon a showing that the agency acted illegally, arbitrarily or in abuse of its discretion or that the decision is unsupported by the evidence. *Connecticut Humane Society* v. *Freedom of Information Commission,* 218 Conn. 757, 762, 591 A.2d 395 (1991); *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 605, 590 A.2d 447 (1991). The determination of whether an applicant has "repeatedly violated pertinent statutes, regulations, orders or permit terms or conditions at any solid waste facility" is a question of fact. We conclude that nothing in the record indicates an abuse of discretion by the commissioner in refusing to find that BFI's violations had been repeated. We further conclude that the commissioner reasonably determined that evidence of investigations, *alleged* violations of pertinent statutes and *pending* proceedings involving BFI, did not require denial of the defendants' application for a solid waste construction permit.

## II

The plaintiffs next claim that the trial court should have concluded that the defendants' application for an air emissions permit was improperly granted. According to the plaintiffs, because the defendants failed to analyze the particulate matter measuring less than ten microns in diameter that will be emitted by the facility and because they failed properly to analyze the impact that the facility will have on the prevention of significant deterioration of the ambient air quality, their application should have been denied.

## A

The plaintiffs first assert that the defendants' failure to analyze the particulate matter measuring less

than ten microns in diameter $(PM_{10})$[10] that will be emitted by the facility required denial of their application for an air emissions permit. We disagree.

Title 40 C.F.R. § 52.21 (i) (1990) provides in pertinent part: "(1) No stationary source . . . to which the requirements of paragraphs (j) through (r) of this section apply shall begin actual construction without a permit which states that the stationary source . . . would meet those requirements." Title 40 C.F.R. § 52.21 (j) (2) (1990) provides: "A new major stationary source shall apply best available control technology for each pollutant subject to regulation under the Act that it would have the potential to emit in significant amounts."[11] The plaintiffs argue that, pursuant to § 52.21 (i), the defendants' application was required to include an analysis showing that the facility would apply the best available control technology with respect to limiting $PM_{10}$ emissions and, therefore, meet the requirement of § 52.21 (j) (2). We are unpersuaded.

Title 40 C.F.R. § 52.21 (i) (4) (1990) provides in pertinent part: "The requirements of paragraphs (j) through (r) of this section shall not apply to a particular major stationary source . . . if . . . (x) The source . . . was subject to 40 CFR 52.21, with respect to particulate matter, as in effect before July 31, 1987 and the owner or operator submitted an application for a permit under this section before that date, and the Administrator [of the environmental protection agency] subsequently determines that the application as submitted was complete with respect to the particulate

---

[10] Particulate matter measuring less than ten microns in diameter, $PM_{10}$, is a pollutant, the emission of which is subject to regulation under the Clean Air Act. 42 U.S.C. § 7401 et seq. (1988); see 40 C.F.R. § 52.21 (b) (23) (i) (1990).

[11] With respect to $PM_{10}$, "a significant amount" is the potential to emit 15 tons per year. See 40 C.F.R. § 52.21 (a) (23) (i) (1990). It is undisputed that the facility has the potential to emit $PM_{10}$ in significant amounts.

matter requirements then in effect in this section. Instead, the requirements of paragraphs (j) through (r) of this section that were in effect before July 31, 1987 shall apply to such source or modification.''

It is undisputed that the facility was subject to 40 C.F.R. § 52.21, with respect to particulate matter, as in effect before July 31, 1987. See 40 C.F.R. § 52.21 (1986). The plaintiffs assert, however, that the defendants failed to submit a complete application for an air emissions permit under § 52.21 prior to July 31, 1987. The plaintiffs first argue that because the defendants submitted their application for a permit to the commissioner, rather than to the administrator of the environmental protection agency (the administrator), they failed to submit an application under § 52.21. Because the administrator has delegated authority to enforce the standards of performance for new stationary sources to the commissioner; see Regs., Conn. State Agencies § 22a-174-3 (a) (2) (commissioner has been delegated authority to enforce 40 C.F.R. Part 60 by the administrator); 40 C.F.R. Part 60 (1990) (standards of performance for new stationary sources); this argument is without merit.

The plaintiffs next assert that the defendants' application was not complete until September 16, 1987, and that, therefore, the exemption set forth in § 52.21 (i) (4) (x) does not apply. The commissioner determined that a complete application for an air emissions permit was submitted by the defendants before July 31, 1987. The plaintiffs' second assertion, therefore, is equally without merit.

Because the defendants submitted a complete application for an air emissions permit prior to July 31, 1987, the requirements of 40 C.F.R. § 52.21 (i) and (j) (1990) do not apply to their application for an air emissions permit. Instead, the requirements of 40 C.F.R. § 52.21 (1986), which were the regulations in effect prior to

July 31, 1987, govern the defendants' application. 40 C.F.R. § 52.21 (i) (4) (x) (1990). $PM_{10}$ is not a pollutant subject to regulation under the 1986 regulations. See 40 C.F.R. § 52.21 (b) (23) (i) (1986). We conclude, therefore, that the defendants were not required to conduct an analysis of $PM_{10}$ emissions in order to obtain an air emissions permit.

B

The plaintiffs next assert that because the defendants failed to analyze properly the effect that the facility will have on the prevention of significant deterioration of the ambient air quality (PSD),[12] their application for an air emissions permit should have been denied. We disagree.

Title 40 C.F.R. § 52.21 (m) (1) (1990) provides in pertinent part: "(i) Any application for a permit under this section shall contain an analysis of ambient air quality in the area that the major stationary source . . . would affect for each of the following pollutants: (a) For the source, each pollutant that it would have the potential to omit in a significant amount . . . ." The plaintiffs do not dispute that the defendants submitted an analysis of PSD with their application. They assert, however, that, because the defendants' analysis did not contain all essential data and because some of the data that it included was outdated, inaccurate

---

[12] Ambient air quality is a classification of the air based on the level of pollutants that are present. 1 F. Grad, Treatise on Environmental Law § 2.03, p. 2-82. Under the Clean Air Act, the administrator is required to establish standards of ambient air quality for designated regions of the United States that the states are required to implement, maintain and enforce pursuant to state implementation plans. Id.; see also 42 U.S.C. §§ 7409, 7410 (1988). The prevention of significant deterioration of the ambient air quality (PSD) is an express policy of the Clean Air Act. See 42 U.S.C. § 7471 (1988); see also 1 F. Grad, supra, § 2.03 [b], p. 2-170. The requirements of 40 C.F.R. § 52.21 (c) through (m), (p) (1990), are designed to ensure PSD.

or unverified, the analysis was inadequate. Nevertheless, the plaintiffs have not challenged the commissioner's conclusion that "[t]he [f]acility will meet all applicable state and federal regulations governing the issuance of permits for a new source of air emissions."

We conclude that, despite the alleged inadequacy of the defendants' PSD analysis, because the plaintiffs do not challenge the commissioner's conclusion that the facility will comply with applicable federal and state regulations governing new stationary sources of air emissions, including regulations designed to ensure PSD, the commissioner properly granted the defendants' application for an air emissions permit.

The judgment is affirmed.

In this opinion the other justices concurred.