******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# MARTIN J. PRAISNER, JR. *v.* STATE OF CONNECTICUT
## (AC 40784)

DiPentima, C. J., and Prescott and Elgo, Js.

*Syllabus*

The plaintiff, a former member of a special police force maintained by the defendant state of Connecticut for one of its universities, sought, pursuant to statute ([Rev. to 2013] § 53-39a), indemnification from the state for economic losses that he allegedly incurred as a result of a federal criminal action filed against him in his official capacity. The state filed a motion to dismiss, claiming that the action was barred by sovereign immunity and, therefore, that the trial court lacked subject matter jurisdiction. The trial court denied the motion to dismiss, concluding that the action was not barred by the doctrine of sovereign immunity because members of the university's special police force fell within a class of individuals, namely, members of a local police department, who are expressly authorized to bring an action against the state under § 53-39a. Thereafter, the state filed a motion for summary judgment, renewing its claim that the court lacked subject matter jurisdiction due to sovereign immunity, and the plaintiff filed a cross motion for summary judgment as to liability only. The trial court, relying on the law of the case doctrine, denied the state's motion and granted the plaintiff's motion. Following a hearing in damages, the court rendered judgment in favor of the plaintiff and awarded him certain damages. Subsequently, the trial court rendered a supplemental judgment in which it awarded the plaintiff attorney's fees and costs. On the state's amended appeal to this court, *held* that the trial court improperly concluded that the plaintiff's action was not barred by the doctrine of sovereign immunity, as that court incorrectly determined that the plaintiff, as a member of the university's special police force, was authorized to bring the action pursuant to § 53-39a: this court, after reviewing the unambiguous text of § 53-39a and its relationship to other statutes, concluded that the plaintiff failed to establish a reasonable basis on which to conclude that his claim for indemnification fell within the waiver of sovereign immunity contained in § 53-39a, as that statute, which identifies certain officers and other classes of persons with exacting precision, contains no reference to members of the university's special police force, which strongly suggested that they do not fall within the narrow scope of the statute, and, unlike § 53-39a, the statute ([Rev. to 2013] § 10a-142, as amended by No. 13-195, § 1, of the 2013 Public Acts), that provides for the establishment of special police forces for public universities of the state, by its plain language specifies particular duties, responsibilities and authority that members of those special police forces share with members of local police departments, thereby recognizing that those entities are distinct, which distinction is underscored by a number of other statutes in which the legislature has differentiated between them; moreover, because our Supreme Court has construed the term "local police department" as used in § 53-39a as implicating governmental, rather than sovereign, immunity, it was difficult to reconcile the plaintiff's undisputed status as a state employee with his contention that he qualified under § 53-39a as a member of a local police department, and common sense persuaded this court that the legislature did not intend state employees like the plaintiff to qualify as members of a local police department; furthermore, given that § 10a-142 (b) expressly identifies certain sections of the General Statutes as ones either applicable or inapplicable to members of such special police forces, but § 53-39a is not mentioned in any manner, if the legislature had intended § 53-39a to apply to members of the university's special police force, it easily could have included that statute among those specifically identified in § 10a-142 (b), but it did not do so, and § 10a-142 (e) contains an indemnification provision that applies specifically to members of the university's special police force without reference to § 53-39a, which suggested that the legislature intended § 10a-142 (e) to govern the indemnification of such members.

Argued December 6, 2018—officially released April 30, 2019

*Procedural History*

Action for indemnification for economic losses allegedly incurred by the plaintiff as a result of a federal criminal action filed against him in his capacity as a police officer, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. Richard M. Rittenband*, judge trial referee, denied the defendant's motion to dismiss; thereafter, the court, *Scholl, J.*, denied the defendant's motion for summary judgment and granted the plaintiff's motion for summary judgment as to liability; subsequently, after a hearing in damages, the court, *Pittman, J.*, rendered judgment for the plaintiff, from which the defendant appealed to this court; thereafter, the court, *Pittman, J.*, rendered a supplemental judgment awarding the plaintiff attorney's fees and costs, and the defendant filed an amended appeal. *Reversed*; *judgment directed.*

*Emily V. Melendez*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the appellant (defendant).

*Elliot B. Spector*, with whom was *David C. Yale*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, the state of Connecticut, appeals from the judgment of the trial court denying its motion for summary judgment in this indemnification action brought by the plaintiff, Martin J. Praisner, Jr., pursuant to General Statutes (Rev. to 2013) § 53-39a.[1] On appeal, the state contends that the court improperly concluded that the action was not barred by the doctrine of sovereign immunity.[2] We agree and, accordingly, reverse the judgment of the trial court.

The facts are not in dispute. At all relevant times, the state maintained a special police force for Eastern Connecticut State University (university). The plaintiff was a member of that special police force and an employee of the state. While on duty on September 1, 2008, the plaintiff was involved in an incident in which he allegedly "deployed pepper spray against an intoxicated and violent prisoner in a converted Sheetrock coat closet, which was used as a holding cell, and failed to promptly decontaminate the prisoner." Weeks later, the plaintiff was placed on paid administrative leave by the university. He thereafter applied for a position with the state's Department of Correction (department) and was hired as a correction officer on August 15, 2009.

On December 1, 2009, the plaintiff was indicted by the federal government and charged with the crimes of conspiracy to violate an individual's civil rights in violation of 18 U.S.C. § 241 and deprivation of an individual's civil rights in violation of 18 U.S.C. § 242. Following his arrest, the plaintiff's employment with the department was terminated. After two federal trials that both resulted in hung juries, the United States District Court for the District of Connecticut on August 10, 2011, granted the government's motion to dismiss the indictment against the plaintiff.

The plaintiff subsequently demanded reimbursement from the state for economic losses that he allegedly incurred as a result of his federal prosecution. When the state declined to do so, the plaintiff commenced the present action. His one count complaint sought indemnification pursuant to § 53-39a "for economic losses sustained . . . as a result of the aforesaid arrest and prosecution, including the payment of any legal fees incurred in pursuing these damages."[3]

In response, the state moved to dismiss the action for lack of subject matter jurisdiction. In the memorandum of law that accompanied that motion, the state acknowledged that § 53-39a "waives the [s]tate's immunity to liability and suit," but only with respect to "those individuals who fall within the designated classifications" set forth in that statute. The state then argued that (1) members of the university's special police force do not fall within the class of individuals who expressly are authorized to bring an action against the state pursu-

ant to § 53-39a and (2) the complaint contained no allegation that the plaintiff had obtained permission from the Claims Commissioner to institute the action for monetary relief. See General Statutes § 4-160.[4] The plaintiff filed an objection to the motion to dismiss, to which the state filed a reply brief.

The court, *Hon. Richard M. Rittenband*, judge trial referee, heard argument from the parties on March 17, 2014. In an order issued later that day, the court concluded that a member of the university's special police force "falls under the category of a member of a local police department" as that term is used in § 53-39a. The court therefore denied the motion to dismiss. The state filed a motion to reargue that ruling, which the court denied.

The state then answered the complaint, and the plaintiff filed a certificate of closed pleadings, in which he requested a court trial. On January 13, 2017, the state filed a motion for summary judgment, renewing its claim that the court lacked subject matter jurisdiction due to sovereign immunity. Relying on the law of the case doctrine,[5] the court, *Scholl, J.*, denied that motion. The court at that time also granted the plaintiff's cross motion for summary judgment as to liability only. A hearing in damages followed, at the conclusion of which the court, *Pittman, J.*, rendered judgment in favor of the plaintiff "in the amount of $658,849 in lost earnings and benefits . . . ." Approximately one month later, the court rendered a supplemental judgment, in which it awarded the plaintiff $118,196.04 in attorney's fees and costs. This appeal followed.

On appeal, the state claims that the court improperly determined that the plaintiff, as a member of the university's special police force, was authorized to bring the present action in the Superior Court pursuant to § 53-39a. The state argues that because the plaintiff has not established that he falls clearly within any of the classifications of individuals specified therein, sovereign immunity bars his action for monetary relief. We agree.

At the outset, we note that "[t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Machado* v. *Taylor*, 326 Conn. 396, 403, 163 A.3d 558 (2017).

Our courts "have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . A sovereign is exempt from

suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." (Citations omitted; internal quotation marks omitted.) *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977). Rooted in the recognition that subjecting "state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property," the doctrine of sovereign immunity shields the state "from unconsented to litigation, as well as unconsented to liability." (Internal quotation marks omitted.) *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 282, 105 A.3d 857 (2015).

In the present case, the plaintiff's action is one for monetary damages stemming from his criminal prosecution in federal court. To avoid dismissal, the allegations of his complaint, construed in their most favorable light, must establish either that his indemnification action falls clearly within a statutory waiver of sovereign immunity or that the Claims Commissioner had authorized the action. See *Nelson* v. *Dettmer*, 305 Conn. 654, 661, 46 A.3d 916 (2012); *Babes* v. *Bennett*, 247 Conn. 256, 262, 721 A.2d 511 (1998). Fairly construed, the plaintiff's complaint alleges that, as a member of the university's special police force, he qualifies under the statutory waiver embodied in § 53-39a as a member of a local police department.[6] For its part, the state concedes that § 53-39a is an indemnification statute that constitutes an express legislative waiver of sovereign immunity.[7] The state nonetheless contends that members of the university's special police force do not fall within the narrow class of individuals specified therein.

The issue before us, then, is whether the legislature intended to include such members within the waiver of statutory immunity contained in § 53-39a. That issue presents a question of statutory interpretation, over which our review is plenary. See *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 416, 195 A.3d 664 (2018). The principles that govern such review are well established. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . .

When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id.

We begin with the relevant statutory language. General Statutes (Rev. to 2013) § 53-39a provides: "Whenever, in any prosecution of an officer of the Division of State Police within the Department of Emergency Services and Public Protection, or a member of the Office of State Capitol Police or any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of attorney's fees and costs incurred during the prosecution and the enforcement of this section. *Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section.*" (Emphasis added.)

Section 53-39a delineates four classifications of individuals that expressly are authorized to bring an action against the state: (1) officers of the Division of State Police within the Department of Emergency Services and Public Protection; (2) members of the Office of State Capitol Police; (3) any person appointed under § 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management; and (4) members of a local police department. Only the fourth class of individuals is at issue in this case.[8]

The term "local police department" is not defined in § 53-39a or elsewhere in the General Statutes. On appeal, the plaintiff notes that the commonly understood meaning of the term "local," as gleaned from dictionaries, is "relating to place" and "confined to a particular place." See, e.g., Webster's Third New International Dictionary (2002) p. 1327. The plaintiff thus argues that the term "local police department" encompasses the university's special police force, particularly because the General Statutes demarcate the jurisdiction of a special police force as confined to "the geographical limits of the property owned or under the control of" the educational institution. See General Statutes (Rev.

2013) § 10a-142 (a), as amended by No. 13-195, §1, of the 2013 Public Acts.[9] If that construction is correct, it necessarily would encompass persons appointed under § 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities. The fact that the legislature deemed it necessary to specifically and expressly provide indemnification to that class of persons undermines the plaintiff's broad reading of the term "local police department" in § 53-39a. Although § 53-39a identifies certain officers with exacting precision, it contains no reference whatsoever to members of the university's special police force, which strongly suggests that members of the university's special police force do not fall within the narrow confines of § 53-39a. See *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016).

The plaintiff also asserts that members of the university's special police force and members of a municipal police department "are for all intents and purposes identical" and "provide the same full range of services . . . ."[10] We disagree. Unlike § 53-39a, § 10a-142 expressly applies to members of the university's special police force. Titled "Special police forces," § 10a-142 provides for the establishment of special police forces for the public universities of this state, including the university. By its plain language, that statute specifies particular "duties, responsibilities and authority" that members of those special police forces share with members of a "local police department." General Statutes (Rev. to 2013) § 10a-142, as amended by No. 13-195, §1, of the 2013 Public Acts. In so doing, the statute recognizes that those special police forces and local police departments are distinct entities. That distinction also is underscored by other statutes in which the legislature has differentiated "special police forces" from "local police departments." See, e.g., General Statutes (Rev. to 2013) § 10a-55a (a) (mandating that "[t]he state police, local police departments and special police forces established pursuant to section 10a-142 shall cooperate with institutions of higher education in preparing [campus crime] reports"). Section 10a-142 further reflects the limited scope of the duties, responsibilities, and authority shared with members of a local police department. See General Statutes (Rev. to 2013) § 10a-142 (a), as amended by No. 13-195, §1, of the 2013 Public Acts ("[t]he members of each special police force shall have the same duties, responsibilities and authority *under sections 7-281, 14-8, 54-1f and 54-33a and title 53a* as members of a duly organized local police department" [emphasis added]). Had the legislature intended all of chapter 104 of the General Statutes,[11] for example, to apply to members of the university's special police force, it would not have so circumscribed the duties, responsibilities and authority specified in § 10a-142 (a).

In addition, § 10a-142 (b) provides in relevant part that members of the university's special police forces "shall . . . be state employees . . . ." See also General Statutes (Rev. to 2013) § 4-141 (in context of claims against state, defining "state officers and employees" to include "every person elected or appointed to or employed in any office, position or post in the state government, whatever such person's title, classification or function") For that reason, the plaintiff understandably alleged in his complaint that he was "a state employee" as a result of his employment with the university's special police force. As a state employee, the plaintiff does not fall within the protections of "the governmental immunity applicable to municipalities"; *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 26, 664 A.2d 719 (1995); see also *Murphy* v. *Ives*, 151 Conn. 259, 264, 196 A.2d 596 (1963); nor has the plaintiff so argued. Because our Supreme Court has construed the term "local police department" as used in § 53-39a as one implicating governmental, rather than sovereign, immunity; see *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 87–88, 818 A.2d 758 (2003); it is difficult to reconcile the plaintiff's undisputed status as a state employee with his contention that he qualifies under § 53-39a as a member of a local police department.[12] Common sense further persuades us that the legislature did not intend state employees like the plaintiff to qualify as members of a local police department. See *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 171, 931 A.2d 890 (2007) ("[i]t is a fundamental principle of statutory construction that courts must interpret statutes using common sense"); *Trumbull* v. *State*, 206 Conn. 65, 80, 537 A.2d 431 (1988) ("[c]ommon sense . . . is a highly significant guide to statutory interpretation").

It also is significant that § 10a-142 (b) expressly identifies certain sections of the General Statutes as ones either applicable or inapplicable to members of such special police forces, but § 53-39a is not mentioned in any manner.[13] Had the legislature intended § 53-39a to apply to members of the university's special police force, it easily could have included that statute among those specifically identified in § 10a-142 (b), but it did not. The precedent of our Supreme Court instructs that "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 492–93, 55 A.3d 251 (2012); see also *Feehan* v. *Marcone*, 331 Conn. 436, 472, A.3d (2019) ("[b]ecause [General Statutes] § 9-328 is contained in chapter 149 of the General Statutes, and therefore not in the chapters or sections listed in [General Statutes] § 9-372, the definition . . . contained in § 9-372 (7), by its own unambiguous terms, does not apply to § 9-328"). The legislature's failure to include § 53-39a among the

statutes specified in § 10a-142 (b) is further evidence that it did not intend members of the university's special police force to fall within the narrow statutory waiver of sovereign immunity contained in § 53-39a. See *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 177, 9 A.3d 326 (2010).

Section 10a-142 also contains an indemnification provision that applies specifically to members of the university's special police force. It provides in relevant part: "The state shall protect and save harmless any member of the special police forces from financial loss and expense, including reasonable legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of the alleged deprivation by such member of any person's civil rights, which deprivation was not wanton, reckless or malicious, provided such member, at the time of such acts resulting in such alleged deprivation, was acting in the discharge of such member's duties or within the scope of such member's employment or under the direction of a superior officer." General Statutes (Rev. to 2013) § 10a-142 (e), as amended by No. 13-195, § 1, of the 2013 Public Acts.

The existence of a statute that specifically provides indemnification to members of special police forces without reference to § 53-39a suggests that the legislature intended § 10a-142 (e) to govern the indemnification of such members. As our Supreme Court has explained: "[W]e repeatedly have stated in seeking to ascertain legislative intent from more than one statutory pronouncement on a particular subject [that] specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling. . . . This oft-stated principle reflects the fact that specific statutory language constitutes a more accurate representation of the legislature's purpose or intent than more general pronouncements concerning the same subject matter." (Citations omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 713–14, 802 A.2d 731 (2002). The presence of an indemnification provision that specifically pertains to the indemnification of members of the university's special police force counsels against an expansive reading of the term "local police department" in § 53-39a to encompass the plaintiff's claim for indemnification in the present case. See *LaFrance* v. *Lodmell*, 322 Conn. 828, 837–38, 144 A.3d 373 (2016) (court must read statutes together when they relate to same subject matter because legislature presumed to create harmonious and consistent body of law).

Lastly, we are mindful of the particular context in which this issue arises. The plaintiff is a litigant seeking to secure monetary damages from the state. To do so, he must overcome the "strong presumption in favor of the state's immunity from liability or suit"; *Envirotest*

*Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 387–88, 978 A.2d 49 (2009); by demonstrating that his claim clearly falls within the narrow scope of a statutory waiver. See, e.g., *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 452, 54 A.3d 1005 (2012) ("[t]he scope of [an] exception [to sovereign immunity] is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction" [internal quotation marks omitted]); *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 289, 21 A.3d 759 (2011) (statutory waiver of immunity must be narrowly construed and its scope must be confined strictly); *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 558, 737 A.2d 398 (1999) (party attempting to bring action under statutory waiver must come clearly within its provisions). On our review of the text of § 53-39a and its relationship to other statutes, we conclude that the plaintiff has not established a reasonable basis on which to conclude that his claim for indemnification falls within the statutory waiver of sovereign immunity contained in § 53-39a. As applied to the facts of this case, the statute is unambiguous, and we, therefore, do not consider extratextual evidence of its meaning. See *State* v. *Josephs*, 328 Conn. 21, 26, 176 A.3d 542 (2018).

The judgment is reversed and the case is remanded with direction to render judgment dismissing the action for lack of subject matter jurisdiction.

In this opinion the other judges concurred.

[1] Hereinafter, unless otherwise indicated, all references to § 53-39a in this opinion are to the 2013 revision of the statute.

[2] The state alternatively claims that "[e]ven if sovereign immunity did not bar the plaintiff's suit . . . the award of damages [ultimately] determined by the trial court would still be erroneous . . . ." In light of our conclusion that the court lacked subject matter jurisdiction over the plaintiff's action, we do not consider the merits of that claim.

[3] The plaintiff's claimed damages included "lost overtime" with the university's special police force; "lost employment" and "lost overtime" with the department; "lost pension benefits and contributions"; "lost insurance, sick time and vacation time"; and "future lost earnings."

[4] "When sovereign immunity has *not* been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim." (Emphasis added; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 317, 828 A.2d 549 (2003).

[5] "The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . [When] a matter has previously been ruled [on] interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 322, 63 A.3d 896 (2013).

[6] The plaintiff has never alleged that he obtained the authorization of the Claims Commissioner to pursue this action for monetary damages. In addition, we emphasize that the plaintiff brought this indemnification action pursuant to § 53-39a, and not General Statutes (Rev. to 2013) § 10a-142 (a). As the plaintiff's counsel confirmed at oral argument on the motion to dismiss, "[h]is indemnification is solely under § 53-39a."

[7] In its principal appellate brief, the state acknowledges that "the statute

at issue in this case—[§] 53-39a—is a statutory waiver of sovereign immunity" and that "§ 53-39a contains an express waiver of sovereign immunity . . . ." That position is consistent with the state's assertion in its memorandum of law on its motion to dismiss that § 53-39a "waives the [s]tate's immunity to liability and suit . . . ."

[8] In his complaint, the plaintiff alleges that his employment as a member of the university's special police force constituted membership in a local police department, thus bringing his action within the fourth class of individuals specified in § 53-39a. In denying the state's motion to dismiss, the court agreed with that contention.

[9] General Statutes § 10a-142 has been amended on multiple occasions, and now is codified as General Statutes § 10a-156b. Because the plaintiff commenced this action by service of process on July 19, 2013, the operative statute is General Statutes (Rev. to 2013) § 10a-142, as amended by No. 13-195, §1, of the 2013 Public Acts. Unless otherwise indicated, all references to § 10a-142 in this opinion are to that revision.

[10] In its appellate brief, the plaintiff cites a litany of statutes generally pertaining to local police officers. As the plaintiff's counsel conceded at oral argument before this court, none of those statutes provides a definition of "local police" that includes members of a special police force, nor do those statutes expressly indicate their applicability thereto. Furthermore, none of those statutes pertains to indemnification, the subject of § 53-39a.

In addition, we note that several of the statutes relied on by the plaintiff pertain to training programs administered by the Police Officer Standards and Training Council. See General Statutes (Rev. to 2013) § 7-294a et seq. Significantly, General Statutes (Rev. to 2013) § 7-294a (9) defines "[p]olice officer" as "a sworn member of an organized local police department, an appointed constable who performs criminal law enforcement duties, a special policeman appointed under section 29-18, 29-18a or 29-19 *or any member of a law enforcement unit who performs police duties* . . . ." (Emphasis added.) That definition appears to encompass members of the university's special police force, as they are members of a law enforcement unit who perform police duties.

[11] Titled "Municipal Police and Fire Protection," chapter 104 contains numerous sections that pertain to the duties, responsibilities and authority of local police.

[12] In this regard, we note that the legislature in other statutes has utilized the term "local police" as a synonym for municipal law enforcement. See, e.g., General Statutes § 8-265mm (c) (1) (to be eligible for assistance under home purchasing assistance program "an applicant shall . . . [b]e a local police officer employed by a municipal police department on a full-time or part-time basis or a state police officer"); General Statutes § 29-1*l* (a) ("in the event of any incident involving numerous victims or casualties, the chief or superintendent of the local police department having jurisdiction over the municipality where such incident occurred or, where there is no organized local police department, the commanding officer of the state police troop having jurisdiction over such municipality may notify the Commissioner of Emergency Services and Public Protection of such incident").

[13] General Statutes (Rev. to 2013) § 10a-142 (b), as amended by No. 13-195, § 1, of the 2013 Public Acts, provides: "Members of said special police forces shall continue to be state employees and shall be subject to the provisions of chapter 67, and parts III and IV of this chapter. The provisions of part V of chapter 104 and section 7-433c shall not apply to such members."

————————————————