******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARTIN J. PRAISNER, JR. *v.* STATE
# OF CONNECTICUT
## (SC 20315)

Robinson, C. J., and Palmer, McDonald, Mullins,
Kahn, Ecker and Vertefeuille, Js.*

*Syllabus*

Pursuant to statute ((Rev. to 2013) § 53-39a), "[w]henever, in any prosecution
of an officer of the Division of State Police . . . or a local police depart-
ment for a crime allegedly committed by such officer in the course of
his duty as such, the charge is dismissed or the officer is found not
guilty, such officer shall be indemnified by his employing governmental
unit for economic loss sustained by him as a result of such prosecu-
tion . . . ."

The plaintiff, who had been a member of a special police force maintained
by the defendant state of Connecticut for Eastern Connecticut State
University, sought, pursuant to statute ((Rev. to 2013) § 53-39a), indemni-
fication from the state for economic losses that he allegedly had incurred
as a result of federal criminal charges filed against him, but that ulti-
mately were dismissed, for alleged misconduct while he was a member
of that special police force. The state filed a motion to dismiss for lack
of subject matter jurisdiction, claiming that members of a university's
special police force do not fall within the class of individuals who are
expressly authorized to bring an action against the state pursuant to
§ 53-39a. The trial court denied the motion to dismiss, concluding that
a member of a university's special police force did fall under the category
of a member of a local police department, as that term is used in § 53-
39a. The trial court subsequently denied the state's motion for summary
judgment, in which the state renewed its claim that the court lacked
subject matter jurisdiction. Thereafter, the court granted the plaintiff's
motion for summary judgment as to liability only and, after a hearing
in damages, rendered judgment for the plaintiff, from which the state
appealed to the Appellate Court. The Appellate Court reversed the trial
court's judgment, concluding that the trial court incorrectly determined
that the plaintiff was authorized to bring the present action pursuant
to § 53-39a. The Appellate Court reasoned that the legislature did not
intend to include members of a university's special police force within
the definition of "local police department," as used in § 53-39a, because
the legislature's explicit inclusion of members of some police forces
within the limited jurisdictional authority in the language of the statute
indicated that its failure to specifically mention members of a university's
special police force was intentional. The Appellate Court noted that the
university's special police force was created pursuant to a statute ((Rev.
to 2013) § 10a-142) that provides that such a force has some, but not all,
of the duties, responsibilities and authority of local police departments,
limitations that provided further indication that the legislature under-
stood a university's special police force to be a separate and distinct
entity from a local police department. The Appellate Court further noted
that § 10a-142 (e) contains an indemnification provision applicable only
to members of a university's special police force, indicating that the
legislature did not intend the more general provisions of § 53-39a to
apply to such members. On the granting of certification, the plaintiff
appealed to this court. *Held* that the Appellate Court correctly deter-
mined that a member of a university's special police force is not a
member of a local police department entitled to indemnification under
§ 53-39a, and, because that court's well reasoned decision correctly
resolved the issue on which certification was granted, any further analy-
sis regarding the interpretation of § 53-39a served no useful purpose;
moreover, the legislative history of a 2017 amendment to § 53-39a, which
eliminated the phrase "local police department" and added the phrase
"any member of a law enforcement unit," indicated that the change was
not clarifying in nature and, thus, one that would retroactively apply
to the plaintiff, but, instead, was a subsequent, substantive change;
furthermore, there was no indication that the legislature enacted the

2017 amendment in direct response to any judicial decision that the legislature deemed incorrect, as the trial court had not yet rendered judgment in the present case when that amendment was enacted.

Argued January 13—officially released August 3, 2020**

*Procedural History*

Action for indemnification for economic losses allegedly incurred by the plaintiff as a result of a federal criminal action filed against him in his capacity as a member of a special police force, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. Richard M. Rittenband*, judge trial referee, denied the defendant's motion to dismiss; thereafter, the court, *Scholl, J.*, denied the defendant's motion for summary judgment and granted the plaintiff's motion for summary judgment as to liability; subsequently, after a hearing in damages, the court, *Pittman, J.*, rendered judgment for the plaintiff, from which the defendant appealed to the Appellate Court; thereafter, the court, *Pittman, J.*, granted the plaintiff's motion for attorney's fees and costs, and the defendant filed an amended appeal with the Appellate Court, *DiPentima, C. J.*, and *Prescott* and *Elgo, Js.*, which reversed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Elliot B. Spector*, with whom was *David Yale*, for the appellant (plaintiff).

*Emily V. Melendez*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (defendant).

*Opinion*

MULLINS, J. The sole issue in this certified appeal is whether the Appellate Court correctly concluded that a university police officer is not a member of a "local police department" entitled to indemnification under General Statutes (Rev. to 2013) § 53-39a.[1] The plaintiff, Martin J. Praisner, Jr., argues that the Appellate Court erred in concluding that a university's special police force is not a "local police department" for purposes of § 53-39a, and that the legislature, by limiting coverage to local police departments, did not intend for university special police forces to be covered under this statute. We conclude that the Appellate Court correctly interpreted § 53-39a and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. At all relevant times, the defendant, the state of Connecticut, "maintained a special police force for Eastern Connecticut State University (university). The plaintiff was a member of that special police force and an employee of the state. While on duty on September 1, 2008, the plaintiff was involved in an incident in which he allegedly 'deployed pepper spray against an intoxicated and violent prisoner in a converted Sheetrock coat closet, which was used as a holding cell, and failed to promptly decontaminate the prisoner.' Weeks later, the plaintiff was placed on paid administrative leave by the university. He thereafter applied for a position with the . . . Department of Correction (department) and was hired as a correction officer on August 15, 2009.

"On December 1, 2009, the plaintiff was indicted by the federal government and charged with the crimes of conspiracy to violate an individual's civil rights in violation of 18 U.S.C. § 241 and deprivation of an individual's civil rights in violation of 18 U.S.C. § 242. Following his arrest, the plaintiff's employment with the department was terminated. After two federal trials that both resulted in hung juries, the United States District Court for the District of Connecticut on August 10, 2011, granted the government's motion to dismiss the indictment against the plaintiff.

"The plaintiff subsequently demanded reimbursement from the state for economic losses that he allegedly incurred as a result of his federal prosecution. When the state declined to do so, the plaintiff commenced the present action. His one count complaint sought indemnification pursuant to § 53-39a 'for economic losses sustained . . . as a result of the aforesaid arrest and prosecution, including the payment of any legal fees incurred in pursuing these damages.'[2]

"In response, the state moved to dismiss the action for lack of subject matter jurisdiction. In the memorandum of law that accompanied [the motion to dismiss],

the state acknowledged that § 53-39a 'waives the [s]tate's immunity to liability and suit,' but only with respect to 'those individuals who fall within the designated classifications' set forth in that statute. The state then argued that (1) members of the university's special police force do not fall within the class of individuals who expressly are authorized to bring an action against the state pursuant to § 53-39a, and (2) the complaint contained no allegation that the plaintiff had obtained permission from the Claims Commissioner to institute the action for monetary relief. See General Statutes § 4-160. The plaintiff filed an objection to the motion to dismiss, [in response] to which the state filed a reply brief.

"The court, *Hon. Richard M. Rittenband*, judge trial referee, heard argument from the parties on March 17, 2014. In an order issued later that day, the court concluded that a member of the university's special police force 'falls under the category of a member of a local police department' as that term is used in § 53-39a. The court therefore denied the motion to dismiss. The state filed a motion to reargue that ruling, which the court denied.

"The state then answered the complaint, and the plaintiff filed a certificate of closed pleadings, in which he requested a court trial. On January 13, 2017, the state filed a motion for summary judgment, renewing its claim that the court lacked subject matter jurisdiction due to sovereign immunity. Relying on the law of the case doctrine, the court, *Scholl, J.*, denied that motion. The court at that time also granted the plaintiff's . . . motion for summary judgment as to liability only. A hearing in damages followed, at the conclusion of which the court, *Pittman, J.*, rendered judgment in favor of the plaintiff 'in the amount of $658,849 in lost earnings and benefits . . . .' Approximately one month later, the court rendered a supplemental judgment, in which it awarded the plaintiff $118,196.04 in attorney's fees and costs." (Footnote in original; footnotes omitted.) *Praisner* v. *State*, 189 Conn. App. 540, 543–45, 208 A.3d 667 (2019).

The state appealed from the judgment of the trial court to the Appellate Court. On appeal, the state claimed that the trial court incorrectly determined that the plaintiff was authorized to bring the present action pursuant to § 53-39a. See id., 545. The Appellate Court agreed with the state; id.; and concluded that "the plaintiff has not established a reasonable basis on which to conclude that his claim for indemnification falls within the statutory waiver of sovereign immunity contained in § 53-39a." Id., 555.

The Appellate Court began by noting that the "term 'local police department' is not defined in § 53-39a or elsewhere in the General Statutes." Id., 549. As a result, the court relied on the text of § 53-39a and its relation-

ship to other statutes to conclude that the legislature did not intend to include members of a university's special police force within the definition of "local police department." (Internal quotation marks omitted.) Id., 549–50. Specifically, the Appellate Court concluded that, because the legislature chose to explicitly include members of some police forces with limited jurisdictional authority in the language of the statute, its failure to specifically mention members of the university's police force was intentional.[3] See id.

The Appellate Court further reasoned that General Statutes (Rev. to 2013) § 10a-142,[4] which created the university's special police force, demonstrates that the legislature did not intend a university's special police force to be treated as a local police department but understood it to be a separate entity with different benefits and duties. See id., 550–51. In support of this analysis, the Appellate Court noted that § 10a-142 (a) provides that a university's special police force has some, but not all, of the duties, responsibilities and authority of local police departments. Id., 551. Those limitations, the Appellate Court determined, provided further evidence that the legislature understood a university's special police force to be a separate and distinct entity from local police departments. See id., 551–52.

The Appellate Court also relied on the fact that § 10a-142 (e) contains an indemnification provision applicable only to members of a university's special police force. See id., 554. The Appellate Court reasoned that the specific indemnification provision applicable to members of a university's special police force signifies that the legislature did not intend the more general provisions of § 53-39a to apply to members of a university's special police force. See id., 554–55. Accordingly, the Appellate Court concluded that the trial court incorrectly determined that the plaintiff's claim fell within the waiver of statutory immunity in § 53-39a and, thus, reversed the trial court's judgment. Id., 543, 555–56.

Thereafter, the plaintiff filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court [correctly] hold that a university police officer is not a member of a 'local police department' entitled to indemnification under . . . § 53-39a?" *Praisner* v. *State*, 332 Conn. 905, 208 A.3d 1239 (2019).

After reviewing the parties' briefs, the record and oral argument, we conclude that the Appellate Court's reasoning and analysis were sound, and that its conclusion was correct. Repeating its analysis regarding the interpretation of the statute, with which we fully agree, would serve no useful purpose.

Nevertheless, we address one additional issue that was not squarely addressed in the Appellate Court's

opinion, namely, whether No. 17-87 of the 2017 Public Acts (P.A. 17-87), which amended § 53-39a, is clarifying legislation.[5] Specifically, the plaintiff claims that, by eliminating the phrase "local police department" and adding the phrase "any member of a law enforcement unit," the legislature was simply clarifying its original intent that all police officers, including a university's special force, are included within the indemnification provisions in § 53-39a. See P.A. 17-87, § 3. The plaintiff asserts, therefore, that P.A. 17-87 supports his interpretation of § 53-39a and that his claim for indemnification against the state is, and has always been, covered by the waiver of sovereign immunity in § 53-39a. We reject this contention.

We begin by discussing the legal standard that we apply in determining whether the legislature intended statutory amendments to be clarifying in nature. "We presume that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." (Citations omitted; internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 648–49, 687 A.2d 134 (1997).

"To determine whether the legislature enacted a statutory amendment with the intent to clarify existing legislation, we look to various factors, including, but not limited to (1) the amendatory language . . . (2) the declaration of intent, if any, contained in the public act . . . (3) the legislative history . . . and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was enacted in direct response to a judicial decision that the legislature deemed incorrect . . . or passed to resolve a controversy engendered by statutory ambiguity . . . . In the cases wherein this court has held that a statutory amendment had been intended to be clarifying and, therefore, should be applied retroactively, the pertinent legislative history has provided uncontroverted support . . . for the conclusion that the legislature considered the amendatory language to be a declaration of the legislature's original intent rather than a change in the existing statute." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 174, 927 A.2d 793 (2007).

Contrary to the plaintiff's claim, a review of the language of P.A. 17-87 does not contain any indication that the legislature intended the act to clarify the existing statute. Instead, a review of the legislative history of

the act demonstrates that the legislature *actually* understood P.A. 17-87 to create a new right that was not previously applicable to certain classes of police officers. For instance, during a debate on the bill that became P.A. 17-87, Representative Steven Stafstrom explained that "[i]t expands the type of law enforcement officers who must be indemnified." 60 H.R. Proc., Pt. 17, 2017 Sess., p. 7101. In the Senate, Senator Paul R. Doyle introduced this bill. In doing so, and during debate on this bill, the senators did not say anything about the purpose of the legislation. There is also no purpose contained within the act itself. There is simply no indication from the language or the debates that the legislature intended the act merely to clarify the individuals who had always been subject to the indemnification in § 53-39a.

Furthermore, there also is no indication whatsoever that the legislature enacted this act in direct response to any judicial decision that the legislature deemed incorrect. We note that, when the legislature passed P.A. 17-87, the trial court had not yet rendered judgment in the present case, and the rulings of the court allowing the case to move forward to trial were favorable to the plaintiff. Similarly, there is no indication that the legislature passed this act to resolve any controversy engendered by statutory ambiguity.

To be sure, cases in which this court has concluded that an act is clarifying legislation demonstrate the type of legislative history that we have relied on as uncontroverted support that the legislature intended an act to be clarifying legislation. For example, in *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 679 A.2d 925 (1996), this court relied on a statement by Representative Richard D. Tulisano that, "[i]n drafting this, it was intended to be a recital. What we believe current law was and has been, there is a recent Supreme Court case that may have interpreted [the law] differently and I think it is a restatement of what we consider [the] law to be at this point in time." (Emphasis omitted; internal quotation marks omitted.) Id., 290–91, quoting 36 H.R. Proc., Pt. 27, 1993 Sess., p. 9673. In the present case, the plaintiff does not point to, and we cannot find, any similar legislative history supporting his claim that the legislature enacted P.A. 17-87 in response to a particular judicial decision or because of statutory ambiguity.

Thus, the language of P.A. 17-87, its legislative history, and the circumstances surrounding its enactment do not provide the "uncontroverted support" required to conclude that the legislature intended P.A. 17-87 to be "a declaration of the legislature's original intent rather than a change in the existing statute." (Emphasis omitted; internal quotation marks omitted.) *Middlebury* v. *Dept. of Environmental Protection*, supra, 283 Conn. 174. Accordingly, we reject the plaintiff's claim that P.A.

17-87 demonstrates that the legislature intended his claim for indemnification against the state to be covered under § 53-39a.

In sum, having reviewed the briefs of the parties and the record on appeal, we conclude that the issue on which we granted certification was correctly resolved in the well reasoned opinion of the Appellate Court. Consistent with that conclusion, we further conclude that P.A. 17-87 was a subsequent, substantive change to the statute and, thus, not retroactively applicable to the plaintiff in this case. On the basis of the foregoing, we conclude that the Appellate Court correctly concluded that a university's special police force is not a local police department for purposes of § 53-39a.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** August 3, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Hereinafter, unless otherwise indicated, all references to § 53-39a are to the 2013 revision of the statute.

[2] "The plaintiff's claimed damages included 'lost overtime' with the university's special police force; 'lost employment' and 'lost overtime' with the department; 'lost pension benefits and contributions'; 'lost insurance, sick time and vacation time'; and 'future lost earnings.'" *Praisner* v. *State*, 189 Conn. App. 540, 544 n.3, 208 A.3d 667 (2019).

[3] The plaintiff argued that the term "local police department," as used in § 53-39a, means a police force with limited geographical jurisdiction and, thus, included a university's special police force because it was confined to the geographical limits of the property owned or controlled by the university. See *Praisner* v. *State*, supra, 189 Conn. App. 549. The Appellate Court relied on the text of § 53-39a and its specific mention of "any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities . . . ." General Statutes (Rev. to 2013) § 53-39a; see *Praisner* v. *State*, supra, 549–50. The Appellate Court reasoned that, because the legislature chose to specifically include members of these police forces with limited jurisdictional authority in the language of the statute, its failure to specifically mention members of the university's special police forces was intentional. See *Praisner* v. *State*, supra, 549–50, citing *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016); see also *DeNunzio* v. *DeNunzio*, supra, 194 ("[u]nder the doctrine of expressio unius est exclusio alterius—the expression of one thing is the exclusion of another—we presume that when the legislature expresses items as part of a group or series, an item that was not included was deliberately excluded"). We agree. This court has frequently recognized the principle of statutory construction that, "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." (Internal quotation marks omitted.) *Feehan* v. *Marcone*, 331 Conn. 436, 472, 204 A.3d 666, cert. denied, U.S. , 140 S. Ct. 144, 205 L. Ed. 2d 35 (2019). Accordingly, the fact that § 53-39a contains express reference to some police forces within the state with limited geographical authority, but does not expressly reference university police officers, indicates that the legislature did not intend to include members of the university's police force in the waiver of sovereign immunity set forth in § 53-39a.

[4] General Statutes § 10a-142 is now codified at General Statutes § 10a-156b. The plaintiff commenced this action on July 19, 2013. Therefore, the operative statute is General Statutes (Rev. to 2013) § 10a-142, as amended by No. 13-195, § 1, of the 2013 Public Acts (P.A. 13-195). Unless otherwise indicated, all references to § 10a-142 in this opinion are to that revision, as amended by P.A. 13-195, § 1.

[5] Section 3 of No. 17-87 of the 2017 Public Acts provides: "Section 53-39a of the general statutes is repealed and the following is substituted in lieu thereof (Effective October 1, 2017):

"Whenever, in any prosecution of [an officer of the Division of State Police within the Department of Emergency Services and Public Protection, or a member of the Office of State Capitol Police or] any member of a law enforcement unit, as defined in section 7-294a, any person appointed under section 29-18 as a special policeman for the State Capitol building and grounds, the Legislative Office Building and parking garage and related structures and facilities, and other areas under the supervision and control of the Joint Committee on Legislative Management, or [a local police department] any inspector in the Division of Criminal Justice for a crime allegedly committed by such [officer] member, person or inspector in the course of [his] duty, [as such,] the charge is dismissed or the [officer] member, person or inspector found not guilty, such [officer] member, person or inspector shall be indemnified by [his] such member's, person's or inspector's employing governmental unit for economic loss sustained by [him] such member, person or inspector as a result of such prosecution, including the payment of attorney's fees and costs incurred during the prosecution and the enforcement of this section. Such [officer] member, person or inspector may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section."

We note that the additions to the statute made by the act are underlined and the deletions are in brackets.

———————————————————